UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. MATILDA SAENZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-742 |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Dr. Matilda Saenz, Plaintiff in the above-styled and numbered cause ("Plaintiff"), and files this, her First Amended Complaint against the Dallas County Community College District ("DCCCD" and/or "Defendant"), and in support thereof would respectfully show the Court the following:

**I.**
**THE PARTIES**

1.1     Plaintiff is an individual residing in Dallas County, Texas.

1.2     Defendant is a community college district organized and existing pursuant to the laws of the State of Texas for the purpose of operating a system of community colleges in and around Dallas County, Texas.  The address of Defendant's administrative offices is 1601 South Lamar Street, Dallas, Dallas County, Texas  75215.  Defendant may be served with process by serving its Chancellor, Dr. Wright Lassiter, at the foregoing address; however, upon the filing of Plaintiff's Original Complaint on April 13, 2010, Plaintiff requested a Waiver of Service of Summons from Defendant on the same date, in lieu of formal service, by forwarding the Waiver,

along with a copy of Plaintiff's Original Complaint, to Defendant by and through its Chancellor, Dr. Wright Lassiter, and its general counsel, Robert Young. Upon the filing of this Complaint, Plaintiff will forward a copy of same to Defendant by and through its Chancellor, Dr. Wright Lassiter, and its general counsel, Robert Young, and the time for Defendant to respond to this Complaint is governed by Rule 15(a)(3) of the Federal Rules of Civil Procedure. Defendant is being sued in its name and own right as the former employer of Plaintiff under Title VII of the Civil Rights Act of 1964, under Chapter 21 of the Texas Labor Code, for federal and state constitutional and/or statutory violations, for breach of contract, and under the Federal Declaratory Judgment Act.

## II.
## JURISDICTION AND VENUE

2.1. This Court has jurisdiction over this matter pursuant to the United States Constitution, particularly the First, Fifth, and Fourteenth Amendments, and under federal statutory law, particularly Title VII of the Civil Rights Act of 1964 ("Title VII"),[1] 42 U.S.C. §§ 1981a, 1983, and 1988, and the Federal Declaratory Judgment Act.[2]

2.2 This Court is vested with original and supplemental jurisdiction over these claims by operation of 28 U.S.C. §§ 1331, 1343, and 1367.

2.3 This Court has in personam jurisdiction over Defendant because it is a community college district organized and existing pursuant to the laws of the State of Texas, located in the State of Texas. Moreover, Defendant is a state actor.

2.4 This Court has pendent jurisdiction over the state law claims asserted by Plaintiff herein, including the breach of contract claim and those claims asserted under the Texas Constitution, Chapter 21 of the Texas Labor Code, Chapter 106 of the Texas Civil Practice and

---

[1] 42 U.S.C. §§ 2000e *et seq.*

[2] 28 U.S.C. § 2201.

Remedies Code, Chapter 271 of the Texas Local Government Code, and Texas common law and/or statute.

2.5     Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 because it is the judicial district in which Defendant resides and in which a substantial part of the events or omissions giving rise to the claim occurred.

2.6     Additionally, an actual controversy exists between the parties hereto within the meaning of 28 U.S.C. § 2201, and this Court is, therefore, vested with the power in the instant case to declare and adjudicate the legality and/or constitutionality of the actions and/or conduct by Defendant against Plaintiff.

### III.
### FACTUAL BACKGROUND

3.1     On or about May 26, 2009, Plaintiff and all of the five (5) instructional/academic deans at Mountain View College ("MVC"), which is a part of DCCCD, wrote and submitted electronically an official memorandum to the President of MVC, Felix A. Zamora ("Zamora"), regarding fiduciary concerns and the potential impact on student learning that would result from proposed budget cuts for the 2009-2010 academic year.   Dr. Wright Lassiter, Chancellor of DCCCD, was copied onto the memorandum.   More specifically, the memorandum, which was entitled, "Budget Implications for Instruction at Mountain View College (MVC)," gave Zamora an overview of the potential adverse impacts that would be created as a result of a 2.5% reduction applied to the budgets of each academic division (with an additional budgetary reduction of approximately $150,000.00 directed by Sharon Davis, the Vice President of Business Services for MVC ("Davis")).

3.2     As one of the academic leaders of MVC, Plaintiff, who was the Vice President of Instruction for MVC, constantly and continuously worked with the academic deans of MVC in

furtherance of her collaborative style of leadership, which she established at the outset of her tenure with MVC in or around December 2004. Plaintiff and the deans were very concerned that the aforementioned cuts would impact instruction and the services that had already contributed to student success initiatives at MVC. Furthermore, Plaintiff and the deans proposed to Defendant that "as a team and together with faculty, we need a truly collaborative solution to this economic crisis we now face" (Memorandum of May 26, 2009).

3.3      As a result of the aforementioned concerns, the memorandum was sent to Zamora's electronic mail inbox on or about the morning of May 26, 2009, and by noon on that same day, Zamora left a voice message on Plaintiff's cell phone to give him a call. At that time, Plaintiff was attending the closing ceremonies at the National Institute of Staff and Organizational Development (NISOD) in Austin, Texas, where she and other MVC faculty members conducted a presentation on Course Redesign and the Common Book, a proposal submitted by Plaintiff in her attempt to celebrate, with a national audience, faculty innovative approaches to instruction which directly impact student success and retention.

3.4      Immediately following the closing ceremonies, Plaintiff returned Zamora's call but did not get an answer. Plaintiff proceeded to travel to the Corpus Christi area to visit her 95 year old mother in law and stopped in San Antonio, Texas for a late lunch. Just following lunch, Plaintiff received a phone call from Zamora. Zamora was livid and called Plaintiff and the deans "hysterical" and further stated that he did not believe the statements regarding the projected "academic landscape" of MVC if the proposed cuts were made. Zamora asserted that Plaintiff's actions "bordered in insubordination" and that he would "take that up later" when she returned to MVC. Zamora also proceeded to insult Plaintiff by stating that the memorandum showed her "lack of understanding of the budget and leadership/management skills," which evidences

Zamora's discriminatory attitude toward Plaintiff as a female since Zamora was fully aware that Plaintiff chaired and wrote the primary content for the currently implemented Instructional Administrative Institute ("IAI") at DCCCD.  The IAI was based upon the Deans' Academy that Plaintiff created for the new instructional deans hired at MVC.

3.5     During their telephone conversation, when Zamora heard Plaintiff's rationale regarding the impact to the continued success of students and to the "step backward" in the progress already made at MVC regarding student success initiatives, Zamora responded by yelling loudly, "I don't care."  Zamora went on to state that the memorandum was "ridiculous" and "not appreciated."  This incident began Zamora's efforts to damage and/or harm Plaintiff's leadership and competence and to continually retaliate, harass, and/or otherwise cause harm to Plaintiff in every way he possibly could.

3.6     The retaliation and the actions of Zamora against Plaintiff's openness, passion, and eagerness to work toward student success at MVC have included but are not limited to his total disregard for the academic transformation of MVC.  The academic transformation was the first assignment given to Plaintiff upon her arrival at MVC in December 2004, a transformation which changed not only the academic structure of MVC under her leadership but also began the even more difficult transformation to create a "culture of evidence."  Believing wholeheartedly in the value of collaboration leading to the acceptance of accountability and eventually innovation, Plaintiff worked daily and incessantly in seeking to integrate the leading hallmark of a successful learning college, centered on student success.

3.7     On or about June 3, 2009, a meeting was scheduled between the Vice President of Instruction Staff at MVC.  Zamora decided to attend this meeting, and during the course of that meeting, Zamora acted unprofessionally and conducted himself in behavior unbecoming of a

college president.   Zamora was incensed because Plaintiff and the deans had copied his supervisor, Chancellor Lassiter, onto the memorandum.   At one point during the meeting, Zamora stated that he had taken a lot of crap from the faculty and that he would continue to fight them.   At another point in the meeting, Plaintiff mentioned the need for openness and transparency in the college budget discussions since much of the information she received from Davis was not for the deans to review.   Zamora stated that he would take responsibility for creating a meeting with all budget unit managers for budget concerns; however, to date, this action has not taken place at MVC.

3.8   After the June 3rd meeting, Zamora retaliated against Plaintiff by giving her a negative evaluation and issued her with a Performance Improvement Plan.   Prior to this evaluation, Zamora had previously given Plaintiff four (4) full years (2005-2008) of exemplary evaluations.   Nothing stated, expressed, or implied in the months prior and leading to the memorandum and the ensuing evaluation of June 3rd set up or gave any indication that the evaluation would be negative.   The June 3rd evaluation meeting with Zamora represented a total departure from his previous evaluations, immediately on the heels of the memorandum. Additionally, the poor evaluation was in complete contrast to the actual performance of Plaintiff during her time at DCCCD:   Plaintiff literally won every DCCCD excellence in teaching award as a professor, received university-wide awards as a doctoral student, and was nominated "administrator of the year" at MVC.   Further, Plaintiff is the creator, writer, and implementer of MVC Deans' Academy, a plan so exemplary that DCCCD used it as the basis of the first Career Institute for DCCCD—the IAI, comprised by a DCCCD committee that was chaired by Plaintiff. Moreover, as evidenced by a comparison of Plaintiff's evaluations from 2005 to 2008 with Zamora's June 2009 negative evaluation, Zamora did not have a problem with Plaintiff's

performance until she (a female) appeared to question his authority by raising budgetary issues, which are matters of public concern.

3.9     Additionally, in or around July 2009, at the graduation of the first graduating class from DCCCD's IAI (based on Plaintiff's MVC Deans' Academy), Plaintiff gave a speech, and Zamora was in attendance.  At the conclusion of the speech, Plaintiff's husband was informed by MVC Administration that his contract was not going to be renewed.  At that time, Plaintiff's husband was employed by MVC as the coordinator of a new program designed to assist local high school dropouts obtain their GEDs and enroll at MVC.  On or about July 30, 2009, Plaintiff's husband received written notice that MVC was non-renewing his contract.  Prior to the May 2009 memorandum, Plaintiff's husband had never received any complaints about his performance as coordinator, and moreover, the Texas Education Agency was so impressed with the success of the Dropout Recovery Program that it came to MVC to review the program.  Due to the success of the program, it is currently scheduled to continue until at least the end of 2011.

3.10    Further, since in or around May 2009, Zamora has denied professional development opportunities for Plaintiff, when in the past, Plaintiff was permitted to attend such development programs because they were in the best interests of MVC and its students and faculty.  The most recent example of Zamora's retaliatory conduct occurred when Zamora denied Plaintiff's request to present at and attend the annual TACHE 2010 Conference in San Antonio, Texas in February 2010.  Plaintiff was scheduled to sit on a panel with the Commissioner of Higher Education, Dr. Raymund Paredes, as well as other administrators from a university. Plaintiff was to provide the community college perspective for the State of Texas, due to the fact that she served on a Latino and Minority Student Participation and Success Task Force for the Texas Higher Education Coordinating Board (THECB).

3.11    Prior to Zamora's recent decisions to deny Plaintiff the professional development opportunities that she requested, Zamora approved Plaintiff to serve on the TACHE Board of Directors, as Vice President of Communications and Editor of their newsletter *Noticiario*.  As part of serving on this Board, Plaintiff travelled and attended at least four (4) official state Board meetings a year.  Following the memorandum of May 2009, Plaintiff did not travel nor attend any event connected to TACHE.

3.12    Also, Zamora did not approve her attendance at a Student Learning Outcomes regional conference in Plano, Texas, and he notified Plaintiff of his decision only one day before the scheduled conference.  On the Monday following the Plano conference, Plaintiff attended a meeting of the Latino Task Force.  Zamora ultimately sent Plaintiff an angry e-mail asking why Plaintiff would take October 4th and 5th off to attend a conference; however, October 4, 2009 was a Sunday.

3.13    Since the first poor evaluation that Zamora gave to Plaintiff on June 3, 2009, immediately after the May 2009 memorandum, the rest of the monthly meetings with Plaintiff, as a part of the Performance Improvement Plan implemented by Zamora in June 2009, were all negative.  Zamora never alerted or instructed Plaintiff as to which specific documents or information he wanted before the meetings or specifically brought to the meetings, and further, no agendas were set before the meetings and no agendas were provided to Plaintiff prior to the meetings so that Plaintiff could prepare for the meetings.

3.14    As a result of Zamora's continued actions against Plaintiff (including those set forth above and in Plaintiff's grievance and EEOC Charge), Plaintiff filed a grievance against Zamora on or about November 13, 2009,[3] as well as a charge of discrimination with the Equal

---

[3] The grievance was disregarded and/or ignored by DCCCD and MVC.

Employment Opportunity Commission ("EEOC") on or about November 30, 2009 against Zamora based upon perceived gender discrimination and other retaliatory actions taken by Zamora against Plaintiff.

3.15    Subsequently, on or about December 1, 2009, Zamora conducted a "goal setting meeting" with Plaintiff, and during that meeting, Zamora continued his attempts to make Plaintiff's life miserable and to retaliate against Plaintiff.  Then, on or about February 11, 2010, Zamora and Plaintiff met to discuss the draft of a SACS (Southern Association of Colleges and Schools) Monitoring Report; Plaintiff only discovered two weeks before that Zamora was going to make her responsible for the report.[4]  About two (2) weeks prior to the February 11th meeting, Zamora announced at a College Council meeting that Plaintiff and the deans were working on a SACS Monitoring Report Response Plan; prior to this announcement, Zamora had not informed Plaintiff of her responsibility in this area.  On or about February 18, 2010, Zamora conducted another meeting with Plaintiff to discuss her alleged problems that needed improvement (the poor evaluation given to Plaintiff in or around June 2009).  During the foregoing meetings, Zamora never gave Plaintiff any indication that Plaintiff's contract was not going to be renewed, that her contract was going to be terminated, or that her contract was in jeopardy.

3.16    Also, as another example of Zamora's discriminatory treatment towards Plaintiff, Zamora treated several male deans under his direct supervision very differently from Plaintiff. For instance, Dean Jerry Scheerer (a male) told Zamora that MVC would not rewrite nor resubmit an opportunity that MVC had to revise a SACS 5th-Year Monitoring Report submitted in September 2009.  At that time, Dean Scheerer served as the official SACS Liaison for MVC and was responsible for submitting documents to SACS, which was critical for the accreditation of MVC.  Shortly after MVC submitted its report to SACS, Dean Scheerer received a phone call

---

[4] This SACS issue was ultimately alleged as a reason for the non-renewal of Plaintiff's contract with MVC.

from the SACS Vice President for MVC, and during that conversation, Dean Scheerer was alerted that MVC's response to the requested information on Student Learning Outcomes (SLOs) did not appear to be adequate. The SACS Vice President for MVC indicated that she would give MVC about 2½ weeks to revise that part for re-submission. Dean Scheerer indicated to Zamora that he would not do it and that the 2½ week time period was insufficient.

3.17   As the Chief Academic Officer for MVC, Plaintiff felt that MVC could not ignore this opportunity to rewrite its response on SLOs, and after meeting with the Instructional Deans at MVC, Plaintiff and the deans worked together to rewrite the response on SLOs for MVC's 5th Year Monitoring Report. Zamora was passive during these times of discussion regarding whether MVC should resubmit the report, and he had informed Chancellor Lassiter that MVC had decided not to resubmit the SACS Monitoring Report. If Plaintiff had not taken over the responsibility, MVC would have lost this opportunity to resubmit the report. Countless hours were spent in putting the new response together, and during this incident, Plaintiff saw no evidence that Dean Scheerer was ever reprimanded or treated in a disparaging and/or humiliating manner by Zamora, like Zamora treated Plaintiff over the course of the immediate year prior to her dismissal from MVC.

3.18   As yet another example of the discriminatory treatment, Dean Moises Almendariz (another male) reported directly to Zamora, similar to Plaintiff, and Zamora treated him much more favorably than Plaintiff. For instance, Dean Almendariz was supposed to assist Plaintiff and the deans at MVC; however, when the deans asked for his assistance, Dean Almendariz's usual response was that he was not interested in that activity and elected not to participate. Despite this conduct, Zamora never did anything to correct this situation involving Dean Almendariz, yet, Zamora made time to constantly disparage Plaintiff by sending her accusatory

emails and questioning her professionalism, as he did when he did not want to sign Plaintiff's professional leave forms for two (2) important professional development activities.

3.19    Further, whenever Plaintiff was absent from work at a conference or state meeting, or was out ill, Zamora required Plaintiff to send out an administrator-in-charge email notification—and most recently, when Plaintiff attended a DCCCD meeting, not far from MVC. However, none of the other male administrators at MVC were asked and/or required to send such notifications for in-town meetings.  As set forth above, Zamora intentionally showed favoritism and gave preferential treatment to the male administrators and employees, such as Dean Scheerer and Dean Almendariz.  Further, Zamora elected not to reprimand male administrators and employees in the same manner as he chose to reprimand Plaintiff.

3.20    On or about March 11, 2010, the faculty at MVC voted "no confidence" in Zamora.  In conjunction therewith, the faculty at MVC cited the "climate of fear and mistrust at MVC" that Zamora has instituted in their list of grievances, as well as Zamora's "retaliatory actions against faculty, staff and administrators."  Zamora's management style and his lack of support for Plaintiff and the academic deans have created a difficult and challenging environment at MVC.  As set forth in the MVC Faculty List of Grievances relating to the vote of "no confidence," Zamora's actions "have fostered a decline of faculty and staff morale." Plaintiff's attempts to continue working collaboratively with the academic deans, to provide them support, and to lead them appropriately since the writing of the May 2009 memorandum had become more and more difficult day-by-day.

3.21    On or about March 26, 2010, at yet another meeting, Zamora informed Plaintiff that she was immediately suspended, and he instructed Plaintiff to immediately remove all of her belongings and clear out from MVC that day.  Zamora also informed Plaintiff that her contract

would not be renewed.   This is despite the fact that Plaintiff's revised "goals" for the year included a timeline of August 2010 for completion.   Plaintiff has continually been demeaned and humiliated by Zamora.   Plaintiff's immediate "suspension from Mountain View College" created an atmosphere of disbelief at MVC.   Plaintiff was forced to pack her office, clean her files, and to review her computer documents—all within hours.   Prior to the May 2009 memorandum in which Plaintiff and the deans "went off campus" in alerting Chancellor Lassiter, Plaintiff had been a valued colleague and employee of MVC and DCCCD.

3.22    The foregoing discriminatory and/or retaliatory conduct has damaged Plaintiff physically, emotionally, and mentally.   Such actions have damaged Plaintiff financially, but more importantly, they have resulted in Plaintiff suffering from undue stress, which has caused Plaintiff to seek professional counseling and medical treatment to cope with the traumatic impact on Plaintiff, her family, and her career.

3.23    The foregoing conduct of Defendant demonstrates a policy, pattern, and/or history of discrimination and/or retaliation against Plaintiff.   Since the time when Plaintiff first spoke out about the budgetary concerns outside the channels of her regular supervisor, Zamora, and since the time that Plaintiff filed her grievance and EEOC Charge, Plaintiff has continuously been subjected to retaliation and adverse employment actions.   Specifically, Defendant has created a policy of discrimination and/or retaliation against Plaintiff, and this policy has been carried out by Zamora.   The foregoing conduct of Defendant constitutes unlawful employment practices, which has adversely affected Plaintiff's employment with Defendant and injured and/or damaged Plaintiff.

## IV.
## CAUSES OF ACTION

4.1     ***Alternative Pleadings.***   To the extent necessary, each of the claims set forth

below is pleaded in the alternative.[5]

**A.     Count One:**

### Violation of Title VII of the Civil Rights Act of 1964:
### Discrimination and Retaliation.

4.2     To the extent necessary, Paragraphs 1.1 through 4.1 of this Complaint are hereby

referenced and fully incorporated herein by this specific reference, as though fully set forth

herein.

4.3     As set forth above, Defendant's actions amount to discrimination and retaliation,

and constitute violations under Title VII.   Defendant is prohibited from discriminating against

Plaintiff based on her sex and/or gender under Title VII, and further, Defendant is prohibited

from retaliating against Plaintiff because she opposed such discrimination.   Therefore, Defendant

has violated Title VII.

4.4     As a result of the forgoing, Plaintiff has been injured and/or damaged, and

Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or

in equity, including but not limited to her damages resulting from said conduct by Defendant in

an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief,

and her attorneys' fees and costs.

---

[5] Plaintiff has exhausted and/or attempted to exhaust any and all necessary administrative remedies, or in the alternative, such administrative remedies are useless to pursue and/or have been rendered useless to pursue by Defendant.

**B.      Count Two:**

**Violation of Chapter 21 of the Texas Labor Code:**
**Discrimination and Retaliation.**

4.5      To the extent necessary, Paragraphs 1.1 through 4.4 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.6      As set forth above, Defendant's actions amount to discrimination and retaliation, and constitute violations under Chapter 21 of the Texas Labor Code.  Defendant is prohibited from discriminating against Plaintiff based on her sex and/or gender under Chapter 21 of the Texas Labor Code, and further, Defendant is prohibited from retaliating against Plaintiff because she opposed such discrimination.   Therefore, Defendant has violated Chapter 21 of the Texas Labor Code.

4.7      As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and her attorneys' fees and costs.

**C.      Count Three:**

**Violations of the United States Constitution, First and Fourteenth Amendments,**
**and the Texas Constitution, Article I, § 8: Free Speech and Academic Freedom.**

4.8      To the extent necessary, Paragraphs 1.1 through 4.7 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.9      As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1983, which prevents Defendant from depriving Plaintiff of her rights, privileges, and/or immunities secured under the United States Constitution.

4.10     Defendant deprived Plaintiff of her right to free speech and/or academic freedom, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment.  Additionally or alternatively, Defendant deprived Plaintiff of her right to free speech and/or academic freedom, as secured by Article I, Section 8 of the Texas Constitution.

4.11     Defendant violated Plaintiff's right to free speech and/or academic freedom when Defendant punished and/or retaliated against her when she opposed and spoke out about matters of public concern and/or unlawful or discriminatory employment practices and actions being taken by Defendant.  Plaintiff spoke out about and complained of matters of public concern and/or of unlawful or discriminatory employment practices and actions as to her and/or that were becoming and/or had become the policy, practice, and/or custom at MVC through Zamora and/or that were made, an act of, caused to happen, and/or ratified by policymakers for Defendant, through action and/or inaction.  Defendant violated Plaintiff's right to free speech and/or academic freedom when Defendant took adverse and/or retaliatory actions against Plaintiff because of Plaintiff's complaints about matters of public concern and/or of unlawful or discriminatory employment practices and actions, which Plaintiff made internally through Defendant's grievance procedure, as well as externally to the EEOC and outside her general and/or direct chain of command and/or outside the course and scope of her normal and/or official duties.  Defendant's conduct constitutes violations of Plaintiff's right to free speech and/or academic freedom.

4.12    Defendant violated Plaintiff's right to free speech and/or academic freedom when Defendant punished and/or retaliated against her when she opposed and spoke out against the discriminatory employment practices and actions being taken by Defendant.  Plaintiff spoke out about and complained of gender discrimination as to her and that was becoming and/or had become the policy, practice, and/or custom at MVC through Zamora and/or that were made, an act of, caused to happen, and/or ratified by policymakers for Defendant, through action and/or inaction.  Defendant violated Plaintiff's right to free speech and/or academic freedom when Defendant took adverse and/or retaliatory actions against Plaintiff because of Plaintiff's complaints of unlawful discrimination and retaliation, which Plaintiff made internally through Defendant's grievance procedure, as well as externally to the EEOC and outside her general and/or direct chain of command and/or outside the course and scope of her normal duties. Defendant's conduct constitutes violations of Plaintiff's right to free speech and/or academic freedom.

4.13    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and her attorneys' fees and costs.

**D.    Count Four:**

**Violations of the United States Constitution, Fifth and Fourteenth Amendments, and the Texas Constitution, Article I, § 19: Procedural and Substantive Due Process.**

4.14    To the extent necessary, Paragraphs 1.1 through 4.13 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.15    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1983, which prevents Defendant from depriving Plaintiff of her rights, privileges, and/or immunities secured under the United States Constitution.

4.16    Defendant deprived Plaintiff of her right to procedural and substantive due process, as secured by the Fifth and Fourteenth Amendments to the United States Constitution. Additionally or alternatively, Defendant deprived Plaintiff of her right to procedural and substantive due process, as secured by Article I, Section 19 of the Texas Constitution.

4.17    Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of her protected liberty interest in speaking out about matters of public concern, without due process and/or due course of law.  Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by diminishing Plaintiff's protected liberty interest in speaking out about matters of public concern, without due process and/or due course of law. Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by depriving, diminishing, and/or interfering with Plaintiff's right to free speech and/or academic freedom, her right to be free from retaliation for speaking out about matters of public concern and/or for exercising her right to free speech and/or academic freedom, her right to be free from discrimination based gender, and/or her right to be free from retaliation for opposing unlawful discrimination and/or unlawful employment practices, without due process and/or due course of law.

4.18    Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of her protected liberty interest in her good name and reputation, as well as her ability to pursue her chosen profession, without due process and/or due course of law.  Additionally or alternatively, Defendant violated Plaintiff's right to procedural

due process by diminishing Plaintiff's protected liberty interest in her good name and reputation, as well as her ability to pursue her chosen profession, without due process and/or due course of law.

4.19    Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by depriving Plaintiff of her protected property interest in her employment contracts and agreements with Defendant and/or in the policies, procedures, guidelines, rules, and/or regulations of Defendant, without due process and/or due course of law.   Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by diminishing Plaintiff's protected property interest in her employment contracts and agreements with Defendant and/or in the policies, procedures, guidelines, rules, and/or regulations of Defendant, without due process and/or due course of law.

4.20    Plaintiff was entitled to a hearing and an opportunity for redress of her claims of unlawful employment practices and retaliation, as well as discrimination and retaliation, which are provided for by law; however, Defendant failed and/or refused to provide Plaintiff with the minimal procedural due process and/or the procedural redress system incorporated into Defendant's policies, procedures, guidelines, rules, and/or regulations, effectively denying Plaintiff the due process rights to which she was entitled, thus, violating her right to procedural due process guaranteed by the United States and Texas Constitutions.

4.21    Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by taking adverse and/or retaliatory employment actions against her, without cause and/or for no other reason than because Plaintiff spoke out about a matter of public concern and/or exercised her right to free speech and/or academic freedom.   Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by taking adverse and/or retaliatory

employment actions against her, without cause and/or for no other reason than because of unlawful employment practices and/or Plaintiff's opposition to Defendant's unlawful employment practices.  Additionally or alternatively, Defendant violated Plaintiff's right to procedural due process by taking adverse and/or retaliatory employment actions against her, without cause and/or for no other reason than because of unlawful discrimination and/or Plaintiff's opposition to Defendant's unlawful discrimination.  Defendant's failure and/or refusal to provide a non-discriminatory cause and/or reasons for taking adverse and/or retaliatory employment actions against Plaintiff, in conjunction with Defendant's failure and/or refusal to offer the proper procedural review of Plaintiff's allegations, constitute violations of Plaintiff's constitutional right to procedural due process.

4.22    Moreover, Plaintiff also possesses a claim against Defendant for violation of substantive due process for Defendant's arbitrary, capricious, unreasonable, and/or irrational actions against taken her.  Additionally or alternatively, Plaintiff has been deprived of her protected and fundamental rights without due process of laws in an arbitrary, capricious, unreasonable, and/or irrational manner.

4.23    Defendant's actions and/or conduct further constitute a deprivation of due process, as each and all of the above acts and/or omissions were made in recognition of, as a part of, and/or as a result of the policies, practices, and/or customs of Defendant and were made, an act of, caused to happen, and/or ratified by policymakers for Defendant, through action and/or inaction.  Such actions and/or conduct were non-legislative in nature and deprived Plaintiff of her fundamental rights and/or property and/or liberty interests.  Additionally or alternatively, such actions and/or conduct taken by Defendant against Plaintiff were non-legislative and all

were arbitrary, capricious, unreasonable, and/or irrational state action, depriving Plaintiff of her fundamental rights and/or property and/or liberty interests.

4.24    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and her attorneys' fees and costs.

**E.    Count Five:**

**Violations the United States Constitution, Fourteenth Amendment,
and the Texas Constitution, Article I §§ 3 and 3a: Equal Protection.**

4.25    To the extent necessary, Paragraphs 1.1 through 4.24 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.26    As set forth above, Defendant's actions constitute violations of 42 U.S.C. § 1983, which prevents Defendant from depriving Plaintiff of her rights, privileges, and/or immunities secured under the United States Constitution.

4.27    Defendant deprived Plaintiff of her right to equal protection, as secured by the Fourteenth Amendment to the United States Constitution.   Additionally or alternatively, Defendant deprived Plaintiff of her right to equal protection, as secured by Article I, Sections 3 and 3a of the Texas Constitution.

4.28    Defendant violated Plaintiff's right to equal protection by failing and/or refusing to provide Plaintiff equal treatment based upon Plaintiff's gender and/or by showing preferential and/or special treatment to male employees.   Defendant deprived and/or diminished Plaintiff's right to equal protection by discriminating against her based upon her gender.   Additionally or

alternatively, Defendant's conduct constituted and/or arose to a pattern of repeated discrimination and/or Defendant's conduct has an opportunity to be repeated against persons similarly situated to Plaintiff.  Defendant's conduct constitutes violations of Plaintiff's right to equal protection.

4.29    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded and/or available under law and/or in equity, including but not limited to her damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, equitable relief, and her attorneys' fees and costs.

**F.      Count Six:**

**Violation of Chapter 106 of the Texas Civil Practices and Remedies Code:
Discrimination Because of Gender/Sex.**

4.30    To the extent necessary, Paragraphs 1.1 through 4.29 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.31    As set forth above, Defendant's actions constitute violations of Chapter 106 of the Texas Civil Practices and Remedies Code, which prevents and/or prohibits Defendant from refusing to grant a benefit to Plaintiff, imposing an unreasonable burden on Plaintiff, and/or refusing to award a contract to Plaintiff because of her gender/sex.

4.32    As a result of the forgoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded by Chapter 106 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to her damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, and her attorneys' fees and costs.

**G.      Count Seven:**

**Breach of Contract.**

4.33      To the extent necessary, Paragraphs 1.1 through 4.32 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.34      As set forth above, Defendant breached Plaintiff's employment contracts and/or agreement by failing and/or refusing to abide by and/or comply with the terms thereof. Additionally or alternatively, because Defendant's policies, procedures, guidelines, rules, and/or regulations provide express contractual terms regarding Plaintiff's employment with Defendant, Defendant breached Plaintiff's employment contract by not adhering to its own policies, procedures, guidelines, rules, and/or regulations designated to apply to specific incidences as alleged herein, including but not limited to the prohibition of consideration of gender/sex in decisions regarding Plaintiff's employment with Defendant and/or the prohibition of depriving Plaintiff of her right to free speech and/or academic freedom.  Defendant violated its own policies, procedures, guidelines, rules, and/or regulations by using gender/sex in making determinations about Plaintiff's employment with Defendant and/or retaliating against her based on her exercise of free speech and/or academic freedom.  Defendant's conduct and/or actions constitute a breach of Plaintiff's employment contracts and/or agreements.

4.35      As a result of Defendant's breach, Plaintiff was denied rights, benefits, and/or remedies contractually afforded to Plaintiff by her contracts and/or agreements, as well as by Defendant's policies, procedures, guidelines, rules, and/or regulations.

4.36      As a result of the foregoing, Plaintiff has been injured and/or damaged, and Plaintiff hereby seeks to recover any and all remedies afforded by Chapter 38 of the Texas Civil

Practice and Remedies Code and/or under law and/or in equity, including but not limited to her damages resulting from said breach by Defendant in an amount to be proven and/or determined at the time of trial, equitable relief, and her attorneys' fees and costs.

**H.      Count Eight:**

**Federal Declaratory Judgment Act.**

4.37     To the extent necessary, Paragraphs 1.1 through 4.36 of this Complaint are hereby referenced and fully incorporated herein by this specific reference, as though fully set forth herein.

4.38     Pursuant to 28 U.S.C. §2201, Plaintiff seeks judgment declaring that Defendant violated Plaintiff's constitutional rights, violated and/or breached Plaintiff's employment contracts and/or agreements, violated its own policies, procedures, guidelines, rules, and/or regulations, and/or violated state and/or federal law.

**V.**
**REQUESTED RELIEF**

5.1     As the direct and/or proximate result of the actions and/or conduct of Defendant complained of herein, Plaintiff has suffered, and continues to suffer, from intentional discrimination and/or discriminatory treatment, as well as adverse employment actions, unlawful employment practices, and retaliation, which have damaged and caused, and continues to damage and cause, Plaintiff to experience damages, emotional distress, and mental anguish. Additionally, Defendant violated Plaintiff's constitutional rights as set forth more specifically above.  As such, Plaintiff seeks to recover from Defendant, her actual and/or economic damages occasioned by the wrongful acts of Defendant herein described, in amounts that are within the jurisdictional limits of this Court to be proven and/or determined at the time of trial.

5.2     As to claims under Title VII, Plaintiff herein sues Defendant pursuant to 42 U.S.C. §§ 2000e *et seq*.  All of Defendant's conduct was under color of law.  Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Title VII against Defendant, including but not necessarily limited to damages for her loss of wages, past and future, the harm to her personal and professional reputation, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, mental anguish, and other pecuniary and non-pecuniary losses in an amount within the jurisdictional limits of this Court to be proven at trial.  Plaintiff also seeks back pay and front pay damages from Defendant in the amount equal to the difference between the wages actually received by Plaintiff and the wages Plaintiff would have received had she not been discriminated against, together with an additional amount as compensatory damages, in addition to reasonable and necessary attorneys' fees and any and all other equitable, injunctive, and compensatory relief which may be available.  Additionally or alternatively, Plaintiff seeks damages available under 42 U.S.C. § 1981a, including but not limited to compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses.

5.3     As to claims under Chapter 21 of the Texas Labor Code, Plaintiff herein sues Defendant pursuant to Chapter 21 of the Texas Labor Code, including but not limited to Sections 21.051, 21.055, 21.254, 21.258, 21.2585, and 21.259 of the Texas Labor Code.  All of Defendant's conduct was under color of law.  Accordingly, Plaintiff seeks recovery of the full measure of relief and damages provided by Chapter 21 of the Texas Labor Code against Defendant, including but not necessarily limited to damages for her loss of wages, past and future, the harm to her personal and professional reputation, out-of-pocket losses and/or expenses, emotional pain and suffering, inconvenience, mental anguish, and other pecuniary and

non-pecuniary losses in an amount within the jurisdictional limits of this Court to be proven at trial.  Plaintiff also seeks back pay and front pay damages from Defendant in the amount equal to the difference between the wages actually received by Plaintiff and the wages Plaintiff would have received had she not been discriminated against, together with an additional amount as compensatory damages, in addition to reasonable and necessary attorneys' fees and any and all other equitable, injunctive, and compensatory relief which may be available.

5.4     As to claims for federal violations of the United States Constitution and federal statutes, Plaintiff herein sues Defendant pursuant to 42 U.S.C. § 1983.   All of Defendant's conduct was under color of law.  Accordingly, Plaintiff seeks recovery of the full measure of relief and damages against Defendant, including but not limited to compensatory damages and/or nominal damages (including mental anguish and emotional distress damages), consequential and incidental damages, and any and all other equitable, injunctive, and compensatory relief which may be available under law and/or in equity.

5.5     As to claims for state violations of the Texas Constitution, Plaintiff herein sues Defendant pursuant to the Texas Constitution.   Accordingly, Plaintiff seeks recovery of all equitable relief which may be available under law and/or in equity.

5.6     As to claims for violations of Chapter 106 of the Texas Civil Practices and Remedies Code, Plaintiff seeks recovery of any and all remedies afforded by Chapter 106 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to her damages resulting from said conduct by Defendant in an amount to be proven and/or determined at the time of trial, injunctive relief, and her attorneys' fees and costs.

5.7     As to claims for breach of employment contract, Plaintiff sues Defendant pursuant to Texas law and Chapter 38 of the Texas Civil Practice and Remedies Code.  Because Plaintiff

has suffered substantial damages from Defendant's breach, Plaintiff seeks recovery of any and all remedies afforded by Chapter 38 of the Texas Civil Practice and Remedies Code and/or under law and/or in equity, including but not limited to compensatory damages, consequential and incidental damages, attorneys' fees, and any and all other equitable and compensatory relief which may be available to and/or recoverable by Plaintiff.

5.8     As to claims under the Federal Declaratory Judgment Act, Plaintiff herein sues Defendant pursuant to 28 U.S.C. §2201, and as such, Plaintiff seeks a judgment declaring that Defendant violated Plaintiff's constitutional rights, violated and/or breached Plaintiff's employment contracts and/or agreements, violated its own policies, procedures, guidelines, rules, and/or regulations, and/or violated state and/or federal law.

5.9     In addition to Plaintiff's damages sought herein, Plaintiff seeks an order from this Court enjoining Defendant from continuing its unlawful employment practices against its employees, from retaliating against its employees for opposing such unlawful practices, from discriminating against its employees based on their gender, and from retaliating against its employees for opposing unlawful discrimination.   Given the constitutional violations of Defendant, such injunctive relief is available.  Plaintiff has suffered and will suffer irreparable harm if Defendant is not enjoined as requested, and further, Plaintiff is without any other adequate remedy at law.  Given the constitutional violations of Defendant, such injunctive relief is available.  Plaintiff has suffered and will suffer irreparable harm if Defendant is not enjoined as requested, and further, Plaintiff is without any other adequate remedy at law.

## VI.
## FEES, COSTS, AND INTEREST

6.1     Plaintiff has retained the law firm of Hill Gilstrap, P.C. to represent her in connection with this matter, and has agreed to pay for such reasonable and necessary services.  In

addition to and without waiving and/or limiting any other relief requested in this Complaint, Plaintiff is entitled to and seeks to recover her reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law, in equity, and/or pursuant to 42 U.S.C. §§ 1983, 1988(b), and 2000e-5(k), TEX. LAB. CODE § 21.259, Chapters 38 and 106 of the Texas Civil Practice and Remedies Code, and/or Chapter 271 of the Texas Local Government Code.

6.2     Also, pursuant to 42 U.S.C. § 1988(c) and 2000e-5(k) and/or TEX. LAB. CODE § 21.259, Plaintiff seeks to recover any and all expert fees, which she incurs and/or may incur in bringing this suit.

6.3     Additionally, Plaintiff seeks to recover costs of court, along with pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.
## CONDITIONS PRECEDENT

7.1     All conditions precedent to the relief being sought by Plaintiff in this Complaint have been performed, have occurred, and/or have been waived.

## VIII.
## DEMAND FOR JURY TRIAL

8.1     Pursuant to the Rule 38 of the Federal Rules of Civil Procedure, Plaintiff requests trial by jury and will tender the requisite fee.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon final hearing, Plaintiff recover judgment against Defendant and be awarded:

(1)     any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant (as set forth above more specifically);

(2)      injunctive relief to the extent permitted by law and/or equity;

(3)      equitable relief to the extent permitted by law and/or equity;

(4)      declaratory relief as requested herein;

(5)      her litigation expenses and costs, including but not limited to her reasonable and necessary attorneys' fees and costs and any applicable expert fees;

(6)      pre-judgment and post-judgment interest at the maximum rate permitted by law;

(7)      costs of court; and

(8)      such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,


 /s/ Frank Hill
Frank Hill                           09632000
Michael Y. Kim                       24039960

HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas  76013
(817) 261-2222
(817) 861-4685 Facsimile
fhill@hillgilstrap.com
mkim@hillgilstrap.com

ATTORNEYS FOR PLAINTIFF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2010, I electronically filed Plaintiff's First Amended Complaint with the Clerk for the U.S. District Court, Northern District of Texas, using the CM/ECF system, and on April 30, 2010, I forwarded a file-marked copy of such filing to the following persons via certified mail, return receipt requested:

Dr. Wright Lowenstein Lassiter Jr., Chancellor
Dallas County Community College District
1601 South Lamar Street
Dallas, Texas  75215

Robert J. Young, General Counsel
Dallas County Community College District
1601 South Lamar Street, Suite 208
Dallas, Texas  75215.


  /s/ Michael Y. Kim_____
Michael Y. Kim