IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. MATILDA SAENZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-742-O |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**BRIEF IN SUPPORT OF DEFENDANT DALLAS COUNTY COMMUNITY COLLEGE
DISTRICT'S MOTION FOR PARTIAL DISMISSAL**

**KATIE ANDERSON**
State Bar No. 00789631
katie.anderson@strasburger.com
**M. KASEY RATLIFF**
State Bar No. 24041751
kasey.ratliff@strasburger.com
**STRASBURGER & PRICE, LLP**
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone:     (214) 651-4300
Facsimile:     (214) 651-4330

**ATTORNEYS FOR DEFENDANT
DALLAS COUNTY COMMUNITY COLLEGE
DISTRICT**

# TABLE OF CONTENTS

Page

I.   SUMMARY ........................................................................................................................1

II.  PLAINTIFF'S ALLEGATIONS ........................................................................................2

III. MOTION FOR PARTIAL DISMISSAL............................................................................5

A.  Rule 12(b)(6) Standard ............................................................................................5

B.  Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983 ........................................6

1.  Plaintiff Does Not Allege nor Identify an Official Policymaker or Policy....................7

2.  Plaintiff has Failed to Show a First Amendment Violation...........................................9

(a). The May 26, 2009 Memorandum Did Not Deal With a Matter of Public Concern10

(b). Plaintiff was not Speaking as a Private Citizen but Rather as a Vice President at MVC ...........................................................................................................10

3.  Plaintiff has Failed to Show any Due Process Violation .............................................12

(a). Overview of Due Process Claims .........................................................12

(b). Procedural Due Process ........................................................................13

(c). Substantive Due Process .......................................................................13

(d). Plaintiff's Allegations Do Not Implicate Due Process .........................14

C.  Plaintiff Has Failed to State a Claim for a Violation of Chapter 106 of the Texas Civil Practices and Remedies Code ........................................................................16

IV. CONCLUSION..................................................................................................................17

3091357.2/SP/27566/0215/060910

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beattie v. Madison County Sch. Dist.*,
    254 F.3d 595 (5th Cir. 2001) .............................................................................8, 9

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................5

*Bennett v. City of Slidell*,
    728 F.2d 762 (5th Cir. 1984) (en banc) ..............................................................9

*Bennett v. Pippin*,
    74 F.3d 578 (5th Cir. 1996) ...............................................................................14

*Bishop v. Wood*,
    426 U.S. 341 (1976).............................................................................................12

*Bledsoe v. City of Horn Lake, Miss.*,
    449 F.3d 650 (5th Cir. 2006) ..............................................................................15

*Board of Regents v. Roth*,
    408 U.S. 564 (1972).............................................................................................12

*Bolton v. City of Dallas*,
    541 F.3d 545 (5th Cir. 2008) ...............................................................................8

*Bryan County v. Brown*,
    117 S.Ct. 1382 (1997).........................................................................................6

*Caine v. Hardy*,
    943 F.2d 1406 (5th Cir. 1991) ...........................................................................12

*Causey v. Sewell-Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ...............................................................................5

*Centeno v. City of Dallas*,
    2008 WL 4137989 (N.D. Tex. Sept. 3, 2008).........................................................6

*Chavez v. Brownsville Indep. Sch. Dist.*,
    135 F. App'x 664 (5th Cir. Jun. 15, 2005) ..............................................................8

*Cleveland Board of Educ. v. Loudermill*,
    470 U.S. 532 (1985).............................................................................................13

*Coggin v. Longview Indep. Sch. Dist.*,
    337 F.3d 459 (5th Cir. 2003) ...........................................................................7

*Collins v. City of Harker Heights, Tex.*,
    503 U.S. 115 (1992)........................................................................................14

*Costello v. Mitchell Pub. Sch. Dist.*,
    266 F.3d 916 (8th Cir. 2001) .........................................................................14

*County of Sacramento v. Lewis*,
    523 U.S. 833 (1998)........................................................................................13

*Davis v. McKinney*,
    518 F.3d 304 (5th Cir. 2008) ...........................................................................9

*Doe v. Dallas Indep. School Dist.*,
    153 F.3d 211 (5th Cir. 1998) .......................................................................6, 7

*Doe v. Hillsboro Indep. Sch. Dist.*,
    81 F.3d 1395 (5th Cir. 1996) ...........................................................................5

*Doe v. Taylor Indep. Sch. Dist.*,
    15 F.3d 443 (5th Cir. 1994) ...........................................................................12

*Evans v. City of Dallas*,
    861 F.2d 846 (5th Cir. 1988) .........................................................................13

*Fernandez-Montes v. Allied Pilots Ass'n*,
    987 F.2d 278 (5th Cir. 1993) ...........................................................................6

*Foley v. Town of Randolph*,
    598 F.3d 1 (1st Cir. 2010) ................................................................................9

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006)...............................................................................9, 10, 11

*Hill v. City of Pontotoc*,
    993 F.2d 422 (5th Cir. 1993) ...........................................................................8

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984)............................................................................................5

*Hughes v. City of Garland*,
    204 F.3d 223 (5th Cir. 2000) .........................................................................13

*In re Katrina Canal Breaches Litigation*,
    495 F.3d 191 (5th Cir. 2007) ...........................................................................5

3091357.2/SP/27566/0215/060910

*James v. Collin County*,
　535 F.3d 365 (5th Cir. 2008) ..........................................................................6

*Kaprelian v. Texas Woman's University*,
　509 F.2d 133 (5th Cir. 1975) ....................................................................10, 11

*King v. Olmsted County*,
　117 F.3d 1065 (8th Cir. 1997) ("Generally, mere verbal threats made by a state actor
　do not constitute a § 1983 claim") ..................................................................14

*Lollar v. Baker*,
　196 F.3d 603 (5th Cir. 1999) .........................................................................12

*Lovelace v. Software Spectrum Inc.*,
　78 F.3d 1015 (5th Cir. 1996) ..........................................................................6

*Montgomery County Hosp. Dist. v. Brown*,
　965 S.W.2d 501 (Tex. 1998) ...........................................................................12

*Nixon v. City of Houston*,
　511 F.3d 494 (5th Cir. 2007) ...........................................................................9

*Owen v. City of Independence*,
　445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) .........................................7

*Paul v. Davis*,
　424 U.S. 693 (1976) ....................................................................................13

*Pickering v. Bd. of Educ.*,
　391 U.S. 563 (1968) ................................................................................9, 10

*Pittsley v. Warish*,
　927 F.3d 3 (1st Cir. 1991) .............................................................................14

*Robertson v. City of Plano*,
　70 F.3d 21 (5th Cir. 1995) ........................................................................13, 14

*Rutland v. Pepper*,
　404 F.3d 921 (5th Cir. 2005) .........................................................................15

*Saulpaugh v. Monroe Community Hosp.*,
　4 F.3d 134 (2d Cir. 1993) .............................................................................15

*Siegert v. Gilley*,
　500 U.S. 226 (1991) ..........................................................................13, 15, 16

*Stewart v. Bailey*,
　556 F.2d 281 (5th Cir. 1977) .........................................................................10

3091357.2/SP/27566/0215/060910

*Stone v. Univ. of Maryland Med. Sys.*,
 855 F.2d 167 (4th Cir. 1987) ....................................................................15

*Tex. Antiques Comm. v. Dallas County Cmty. Coll. Dist.*,
 554 S.W.2d 924 (Tex. 1977)......................................................................7

*Tharling v. City of Port Lavaca*,
 329 F.3d 422 (5th Cir. 2003) ....................................................................7

*United States ex. rel. Willard v. Humana Health Plan of Tex., Inc.*,
 336 F.3d 375 (5th Cir. 2003) ....................................................................6

*Univ. of Texas v. Poindexter*,
 No. 03-04-00806 CV, 2009 Tex. App. LEXIS 5112 (Tex. App.--Austin July 3, 2009,
 no pet.) ................................................................................................16, 17

*Van Arsdel v. Texas A&M Univ.*,
 628 F.2d 344 (5th Cir. 1980) ....................................................................15

*Whiting v. Univ. of S. Miss.*,
 451 F.3d 339 (5th Cir. 2006) ....................................................................12

*Williams v. Dallas Ind. Sch. Dist.*,
 480 F.3d 689 (5th Cir. 2007) ....................................................................9

*Williams v. Texas Tech. Univ. Health Sciences Ctr.*,
 6 F.3d 290 (5th Cir. 1993) ........................................................................13

*Wilson v. Garcia*,
 471 U.S. 261 (1985)..................................................................................6

*Wright v. Texas Comm'n on Human Rights*,
 No. 03-03-00710 CV, 2005 Tex. App. LEXIS 5904 (Tex. App.--Austin July 27, 2005,
 pet. dism'd) (mem. op.) ..........................................................................16, 17

**STATUTES**

42 U.S.C. § 1983.........................................................................1, 6, 9, 17

Tex. Civ. Prac. & Rem. Code Ann. §§ 106.001-.004 ..............................17

Tex. Civ. Prac. & Rem. Code Ann. § 106.001(a)......................................16

Tex. Civ. Prac & Rem Code Chapter 106..................................1, 16, 17

TEX. EDUC. CODE ANN. § 23.26 ............................................................7

§ 130.005 of the Texas Education Code ...................................................7

**RULES**

Fed. R. Civ. P. 12(b)(6)................................................................................................................1, 5

**OTHER AUTHORITIES**

U.S. Const. Amendment XIV, § 1 ..............................................................................................12

3091357.2/SP/27566/0215/060910

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. MATILDA SAENZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-742-O |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**BRIEF IN SUPPORT OF DEFENDANT DALLAS COUNTY COMMUNITY COLLEGE
DISTRICT'S MOTION FOR PARTIAL DISMISSAL**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW DALLAS COUNTY COMMUNITY COLLEGE DISTRICT

("DCCCD"), Defendant in the above-styled and numbered cause, and files this its Motion for

Partial Dismissal of Plaintiff's First Amended Complaint ("Complaint") and in support thereof

would respectfully show the Court the following:

## I.
## SUMMARY

Plaintiff is a former employee of DCCCD, a two year public undergraduate institution

comprised of seven colleges and governed by a seven-member Board of Trustees.  Plaintiff

claims that Defendant violated her Constitutional rights and she seeks damages pursuant to 42

U.S.C. § 1983.  Plaintiff also alleges violations of Chapter 106 of the Texas Civil Practices and

Remedies Code.  Defendant moves for dismissal of these two claims pursuant to Fed. R. Civ. P.

12(b)(6) because Plaintiff's First Amended Complaint fails to state a claim upon which relief can

be granted.  At this time, DCCCD is not seeking a dismissal of Plaintiff's additional claims,

including claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, related to

Plaintiff's Causes of Action, Counts One, Two, Seven and Eight.

## II.
## PLAINTIFF'S ALLEGATIONS

Because the standard of review requires the Court to assume the truth of the Plaintiff's

factual allegations, the following summary is based on the Plaintiff's First Amended Complaint.

Plaintiff is the former Vice President of Instruction for Mountain View College

("MVC"), one of the DCCCD colleges.  (Cmplt., p. 3, ¶ 3.2.)  Plaintiff states that on or about

May 26, 2009, Plaintiff and five instructional/academic deans at MVC wrote and submitted a

Memorandum to Felix A. Zamora ("Zamora"), the President of MVC, regarding the concerns of

the authors pertaining to proposed budget cuts at MVC for the 2009-2010 academic year.  (*See*

Cmplt., 3, ¶ 3.1.)  The Memorandum, entitled "Budget Implications for Instruction at Mountain

View College" (the "Memorandum") provided an overview of the potential adverse impact –

from the perspective of the authors - that would be created as a result of the proposed budget

cuts.  (Cmplt., p. 3, ¶ 3.1.)

The same day that Zamora received the Memorandum, Plaintiff alleges that Zamora

called Plaintiff and expressed his displeasure with the Memorandum.  (Cmplt., p. 4, ¶ 3.4.)

Specifically, Plaintiff alleges that Zamora "was livid," and called Plaintiff and the deans

"hysterical" and further stated that he did not agree with the positions taken by the authors of the

Memorandum.  (Cmplt., p. 4, ¶ 3.4.)  Plaintiff further alleges that Zamora asserted that Plaintiff's

actions "bordered in [sic] insubordination" and that he would "take that up later." (Cmplt., p. 4,

¶ 3.4.)  Plaintiff further alleges that Zamora insulted Plaintiff by stating that the Memorandum

showed Plaintiff's "lack of understanding of the budget and leadership/management skills" and

that this statement evidences Zamora's discriminatory attitude towards Plaintiff as a female.

2

(Cmplt., pp. 4-5, ¶ 3.4.)  Plaintiff also alleges that this initial conversation following Zamora's receipt of the Memorandum began Zamora's efforts to "damage and/or harm Plaintiff's leadership and competence and to continually retaliate, harass, and/or otherwise cause harm to Plaintiff in every way he possibly could."  (Cmplt., p. 5, ¶ 3.5.)

At a June 3, 2009 meeting attended by President Zamora and the deans, Plaintiff alleges that Zamora acted unprofessionally and "conducted himself in behavior unbecoming of a college president" when he stated that "he had taken a lot of crap from the faculty and that he would continue to fight them."  (Cmplt., pp. 5-6, ¶ 3.7.)  Plaintiff alleges that at this June 3 meeting she mentioned the need for openness and transparency in the college budget discussions.  (Cmplt., p. 6, ¶ 3.7.)  Plaintiff alleges that following the June 3 meeting, Zamora "retaliated" against Plaintiff by giving her a negative evaluation and issuing her a performance improvement plan. (Cmplt., p. 6, ¶ 3.8.)  Plaintiff alleges that prior to this evaluation, Zamora had previously given Plaintiff exemplary evaluations and that Plaintiff had been a model employee prior to the Memorandum.  (See Cmplt., p. 6, ¶ 3.8.)  Plaintiff alleges that Zamora did not have a problem with Plaintiff's performance "until she (a female) appeared to question his authority by raising budgetary issues, which are a matter of public concern."  (Cmplt., p. 6-7, ¶ 3.8.)

Plaintiff alleges that following the publication of the Memorandum, Zamora retaliated against Plaintiff by denying her professional development opportunities that she requested.  (*See* Cmplt., p. 7, ¶ 3.10 – p. 8, ¶ 3.12.)  Plaintiff also alleges that Zamora retaliated against Plaintiff by conducting monthly meetings with Plaintiff that were negative in tone as part of her Performance Improvement Plan.  (Cmplt., p. 8, ¶ 3.13.)  While it is unclear from Plaintiff's Complaint, Plaintiff implies that the employment contract of Plaintiff's husband, a MVC

employee, was not renewed due to issues associated with the Memorandum.  (*See* Cmplt., p. 7, ¶ 3.9.)

As a result of these alleged actions of Zamora against Plaintiff, Plaintiff filed a grievance against Zamora on or about November 13, 2009, as well as a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 30, 2009 against Zamora based upon perceived gender and race discrimination and other retaliatory actions taken by Zamora against Plaintiff.  (Cmplt., p. 8-9, ¶ 3.14.)  Subsequent to her filing of a grievance and her charge of discrimination, Plaintiff alleges that "Zamora conducted 'a goal setting meeting' with Plaintiff and continued his [Zamora's] attempts to make Plaintiff's life miserable and to retaliate against Plaintiff."  (Cmplt., p. 9, ¶ 3.15.)

Plaintiff also alleges that Zamora treated "several male deans under his direct supervision very differently from Plaintiff."  (Cmplt., p. 9, ¶ 3.16.)  In support of this allegation, Plaintiff alleges that Dean Jerry Scheerer was not reprimanded or "treated in a disparaging and/or humiliating manner by Zamora, like Zamora treated Plaintiff" after Scheerer told Zamora that MVC would not rewrite nor resubmit an opportunity that MVC had to revise a Southern Association of Colleges and Schools ("SACS") Monitoring Report.  (Cmplt., p. 9, ¶ 3.16 – p. 10, ¶ 3.17.)  As another example of alleged discriminating treatment, Plaintiff alleges that Dean Moises Almendariz was "treated much more favorably [by Zamora] than Plaintiff."  (Cmplt., p. 10, ¶ 3.18.)  Specifically, Plaintiff alleges that when Dean Almendariz elected not to assist Plaintiff and the deans at MVC, Zamora did nothing to correct the situation.  (Cmplt., p. 10, ¶ 3.18.)  Finally, Plaintiff alleges that male administrators at MVC were not asked and/or required to send email notifications for in-town meetings whereas Plaintiff was required to do so. (Cmplt., p. 11, ¶ 3.19.)  In general, Plaintiff alleges that Zamora elected not to reprimand male

administrators and employees in the same manner as he chose to reprimand Plaintiff.  (Cmplt., p. 11, ¶ 3.19.)

On or about March 26, 2010, Zamora informed Plaintiff that she was immediately suspended and he instructed Plaintiff to immediately remove all of her belongings and clear out from MVC that day.  (Cmplt., p. 11, ¶ 3.21.)  Zamora also informed Plaintiff at that time that her contract would not be renewed.  (Cmplt., p. 11, ¶ 3.21.)  Plaintiff's handling of the SACS Monitoring Report was cited as the basis for the non-renewal.  (Cmplt., p. 9, ¶ 3.15 fn 4.) Plaintiff alleges that since the time of the May 2009 Memorandum, and since the time Plaintiff filed her grievance and EEOC charge, she has continuously been subjected to retaliation and adverse employment actions.  (Cmplt., p. 12, ¶ 3.23.)  Plaintiff also alleges that she has been continually demeaned and humiliated by Zamora.  (Cmplt., p. 12, ¶ 5.21).  Plaintiff alleges that DCCCD has created a policy of discrimination and/or retaliation against Plaintiff, and this policy has been carried out by Zamora, Plaintiff's regular supervisor.  (Cmplt., p. 12, ¶ 3.23.)

### III.
### MOTION FOR PARTIAL DISMISSAL

#### A.      Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a case for failure to state a claim upon which relief can be granted if the complaint clearly demonstrates that the plaintiff cannot prove any set of facts that would entitle her to relief.  Fed. R. Civ. P. 12(b)(6); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401-02 (5th Cir. 1996).  A motion under Rule 12(b)(6) should be granted if the Plaintiff "fails to plead enough facts to state a claim to relief that is plausible on its face."  *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must accept all well-pleaded facts as true and

view them in the light most favorable to the nonmovant. *Causey v. Sewell-Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "Nevertheless, dismissal is proper if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Centeno v. City of Dallas*, 2008 WL 4137989 *3 (N.D. Tex. Sept. 3, 2008) (citation and internal quotations omitted). Thus, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to avoid a motion to dismiss. *United States ex. rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). In making its determination, a court may consider documents attached to or incorporated in the complaint and matters of which it could take judicial notice. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *United States ex. rel. Willard*, 336 F.3d at 379.

**B.      Plaintiff Fails to State a Claim Under 42 U.S.C. § 1983**

Plaintiff has asserted claims under 42 U.S.C. § 1983. Specifically, Plaintiff's Causes of Action, Counts Three, Four and Five arise under Section 1983. (*See* Cmplt., pp. 16-21.) Section 1983 provides a damages remedy to individuals whose constitutional rights are violated by a person acting under color of state law. *See James v. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Section 1983 creates no substantive rights, but merely provides a remedy for the deprivation of existing constitutional or federal statutory rights. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985). Because *respondeat superior* liability is prohibited under Section 1983, the plaintiff must do more than show isolated constitutional violations by an entity's employees. *See Bryan County v. Brown*, 117 S. Ct. 1382, 1388 (1997). To prevail against a governmental entity, such as DCCCD, Plaintiff must show that the entity's final policymaker maintained an unconstitutional custom, policy, or practice that was the "moving force" behind the Plaintiff's injury. *Id.* at 1389; *see also Doe v. Dallas Indep. School Dist.*, 153 F.3d 211, 216 (5th Cir. 1998)

6

(holding that the alleged constitutional violation must constitute the official act, policy or custom of the district's board of trustees.).

### 1. Plaintiff Does Not Allege nor Identify an Official Policymaker or Policy

DCCCD was created in 1965 as authorized by section 130.005 of the Texas Education Code. *Tex. Antiques Comm. v. Dallas County Cmty. Coll. Dist.*, 554 S.W.2d 924, 925 (Tex. 1977). Its Board of Trustees "constitutes a body corporate" which may "sue and be sued" and has "the exclusive power to manage" the College District's affairs. *Id.* (*citing* TEX. EDUC. CODE ANN. § 23.26). It is settled law that the existence of official policymaker authority is a question of law to be decided by the Court. *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003).

Following ten pages of factual allegations relating to her personal issues with Zamora (Plaintiff's supervisor), Plaintiff offers the following conclusory allegations:

> The foregoing conduct of Defendant demonstrates a policy, pattern and/or history of discrimination and/or retaliation against Plaintiff…Specifically, Defendant has created a policy of discrimination and/or retaliation against Plaintiff, and this policy has been carried out by Zamora.

(Cmplt. p. 12, ¶ 3.23.) Plaintiff fails to allege any specific policy statement, ordinance, regulation, or custom as the cause of her alleged injury, and thus, the dispositive question is whether Plaintiff's alleged constitutional violations were decisions that "may fairly be said to represent official policy." *See Doe*, 153 F.3d at 215.

Plaintiff's case is distinguishable from those cases where final policymakers clearly acted to deprive Plaintiffs of their federal rights, such as by passing a resolution or by voting. *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 461 (5th Cir. 2003) (school board adopted resolution discharging plaintiff as district employee and Fifth Circuit held that board's termination without hearing resulted in due process violation); *Owen v. City of Independence*,

7

445 U.S. 622, 628-29, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) (city council passed resolution ordering city manager to take "appropriate action" against police chief and released investigative reports to news media without pre-termination hearing); *Hill v. City of Pontotoc*, 993 F.2d 422, 424 (5th Cir. 1993) (board of aldermen voted to terminate fire chief without due process).

In the present case, there is no allegation by Plaintiff that DCCCD's Board of Trustees ever considered the non-renewal of Plaintiff's contract with DCCCD or voted to adopt a policy that violated the federal Constitutional rights of Plaintiff..   Instead, Plaintiff offers only conclusory allegations and only complains of actions taken by Zamora, President of one of the seven colleges in the DCCCD.   Apparently, Plaintiff improperly assumes that DCCCD employees can never act without the Board of Trustee's authority and that the non-renewal of Plaintiff's contract with DCCCD could ever have been processed without the approval of the Board of Trustees.  Plaintiff has not even alleged that the Board of Trustees *actually* exercised such control.

The Fifth Circuit Court of Appeals has noted that "there exists a meaningful distinction between policymaking and decision making." *Chavez  v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664, 679 (5th Cir. Jun. 15, 2005); *Bolton v. City of Dallas*, 541 F.3d 545, 549 n.3 (5th Cir. 2008) ("For example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy.").  Just as the authority to make final individual personnel decisions does not constitute an assignment of policymaking power, *see, e.g.*, *Id.* at 550-51 (holding that final decision maker cannot render the city liable where plaintiff cannot show that he was vested with policymaking power), any authority possessed by Zamora to reprimand MVC employees or to make individual personnel decisions likewise does not constitute an assignment or act of policymaking power of the

DCCCD Board of Trustees. See *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 602-03 (5th Cir. 2001) (finding no delegation to superintendent because she could only recommend termination to school board); *Bennett v. City of Slidell*, 728 F.2d 762, 770 (5th Cir. 1984) (en banc) (holding that decisions that were "perhaps discretionary and ministerial" did not constitute policymaking).

Liability against DCCCD is precluded as a matter of law unless the Board of Trustees maintained a policy or practice of allowing a violation of Plaintiff's Constitutional rights. *See Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). Plaintiff has failed to allege a specific policy, practice or custom as the cause of her alleged injury that was adopted by DCCCD's Board of Trustees because there was no such action by the Board of Trustees. Accordingly, since Plaintiff cannot plead or prove such action, Plaintiff has failed to state a claim against DCCCD under § 1983.

### 2.    Plaintiff has Failed to Show a First Amendment Violation

The Supreme Court has long recognized that public employees do not forego all the protections of the First Amendment by virtue of working for the government. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). The Court's employee-speech jurisprudence has protected the rights not only of the employees themselves, but of the general public "in receiving the well-informed views of government employees engaging in civic discussion." *Garcetti v. Ceballos*, 547 U.S. 410, 419 (2006). But, "when public employees make statements *pursuant to their official duties*, the employees are not speaking as citizens for First Amendment purposes". *Id.* at 421 (*emphasis added*); *see Williams v. Dallas Ind. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007); *Davis v. McKinney*, 518 F.3d 304 (5th Cir. 2008); *Nixon v. City of Houston*, 511 F.3d 494 (5th Cir. 2007).

To determine whether Plaintiff's speech is entitled to First Amendment protection, the first inquiry is whether Plaintiff was both (1) speaking about a matter of public concern and (2) speaking as a citizen. *Foley v. Town of Randolph*, 598 F.3d 1 (1st Cir. 2010). If the answer to either of these sub-parts is no, then she has no First Amendment claim. *Garcetti*, 547 U.S. at 418.

**(a)      The May 26, 2009 Memorandum Did Not Deal With a Matter of Public Concern**

According to Plaintiff's Complaint, the Memorandum submitted to President Zamora pertained to fiduciary concerns and the potential impact of proposed budget cuts at MVC. (*See* Cmplt., p. 3, ¶ 3.1.) While First Amendment protection extends to a teacher's right to criticize the actions or policies of school officials, not all speech rises to the level of constitutional protection. *Stewart v. Bailey*, 556 F.2d 281 (5th Cir. 1977) (*citing Pickering v. Board of Education*, 391 U.S. 563 (1968)). *Pickering* requires that the statements "involve matters of general public concern - disagreement about the operations and functions of the college are not protected." *Stewart v. Bailey*, 556 F.2d 281 (5th Cir. 1977). The Fifth Circuit Court of Appeals has previously expressed doubt as to "whether a subordinate's insistence on imposing his general policy views on his superior . . . or publicly denigrating his college fall within these protections." *See Kaprelian v. Texas Woman's University*, 509 F.2d 133 (5th Cir. 1975). The Memorandum at issue merely expressed the opinion of Plaintiff regarding budget issues at MVC and did not deal with a matter of public concern, and as a result, Plaintiff fails to state a claim on her First Amendment claim.

**(b)      Plaintiff was not Speaking as a Private Citizen but Rather as a Vice President at MVC**

Even if the Court determines that some portion of Plaintiff's three page Memorandum dealt with a matter of public concern, Plaintiff's First Amendment Claim still fails because

10

Plaintiff spoke in her official capacity and as part of her official duties.  In *Garcetti*, the Court held that when public employees make statements "pursuant to their official duties," they are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communication from employer discipline.  *Garcetti* at 421.  This is so because "[e]mployers have heightened interests in controlling speech made by an employee in his or her professional capacity."  *Id.* at 422.  The present situation is analogous to *Garcetti*, where a prosecutor wrote an internal memorandum in which he "spoke as a prosecutor fulfilling a responsibility to advise his supervisor about how best to proceed with a pending case." *Id.* at 421.

Though Plaintiff was not required to author the Memorandum as part of her job, she chose to do so as a Vice President at MVC.  Plaintiff and the other authors of the Memorandum voluntarily wrote about issues related to the budget and staffing at MVC in what Plaintiff describes as an "official memorandum".  (*See* Cmplt., p. 3, ¶ 3.1.)  In the Memorandum, Plaintiff addresses Zamora in Plaintiff's official capacity as Vice President of Instruction at MVC and signed listing her official title on the Memorandum.

Plaintiff's speech is distinguishable from the letter to the editor written by the Plaintiff in *Pickering*.  As the Court noted in *Garcetti*, that letter had no official significance and bore similarities to letters submitted by numerous citizens every day.  *Garcetti*, 547 U.S. at 422.  Here, given that Plaintiff authored the Memorandum under her official title, disseminated it to Zamora from her official email address and included her email signature that listed her official title at MVC, it cannot be argued that the speech had no official significance.  Further, Plaintiff's views were not expressed to the general public but were limited to an internal Memorandum disseminated within the workplace.  Because Plaintiff spoke pursuant to her official duties, her

speech was not insulated from employer discipline, and the Court should dismiss Plaintiff's First Amendment claim.

### 3.   Plaintiff has Failed to Show any Due Process Violation

#### (a)   Overview of Due Process Claims

The Due Process Clause states that the state, including public colleges, may not deprive a person of "property" or "liberty" without due process of law. U.S. Const. Amend. XIV, § 1. Property interests are not created by the Constitution but, rather, are entitlements created under state law. *Bishop v. Wood*, 426 U.S. 341, 344 (1976). Under state law, the person must have a legitimate claim to the benefit, not merely a unilateral desire for it. *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 344 (5th Cir. 2006) (*citing Board of Regents v. Roth*, 408 U.S. 564, 577 (1972)). In the employment context, a property interest generally means that the employee's right to employment is protected by statute, contract, or explicit agreement and cannot be removed without cause. *See Lollar v. Baker*, 196 F.3d 603, 608 (5th Cir. 1999). Because Texas is an "at will" employment state, absent an explicit agreement to the contrary, Texas employees may be terminated without cause and without a hearing at any time. *See Montgomery County Hosp. Dist. v. Brown*, 965 S.W.2d 501 (Tex. 1998).

A "liberty" interest is a right expressly enumerated in the Bill of Rights but also includes "fundamental rights implicit in the concept of ordered liberty." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 454 (5th Cir. 1994). Liberty includes freedom from bodily restraint and the right to a hearing when the "person's good name ... is at stake because of what the government is doing to him." *Roth*, 5098 U.S. 573-574.

The courts recognize two types of due process: procedural due process and substantive due process. Procedural due process is concerned only with the procedures utilized by the employer and not the merits of the employer's decision. *See Caine v. Hardy*, 943 F.2d 1406,

1411 (5th Cir. 1991). In contrast, substantive due process protects against certain governmental intrusions regardless of the fairness of the procedures used to implement them. *Robertson v. City of Plano*, 70 F.3d 21, 25 (5th Cir. 1995).

### (b)   Procedural Due Process

A procedural due process claim based on loss of a property interest requires proof that the plaintiff possessed a property interest in continued employment and that she was deprived of that interest without notice and a meaningful opportunity to be heard. *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 538-542 (1985).

A procedural due process claim based on deprivation of a liberty interest requires proof that false and stigmatizing charges were publicly released as a part of the dismissal process and that the employee was deprived of an opportunity to answer the charges. *See Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000). A liberty interest is implicated only if the defamatory statement was made during the termination rather than after the termination. *See Siegert*, 500 U.S. at 233; *Paul v. Davis*, 424 U.S. 693, 710 (1976). The public charges must rise to such a level that they create a "badge of infamy" that destroys the employee's ability to obtain other employment. *Evans v. City of Dallas*, 861 F.2d 846, 851 (5th Cir. 1988). The employee must establish both that he was publicly accused of immorality or dishonesty and that his ability to seek employment was actually impaired. *See id.* at 851. Reputation alone is not a constitutionally protected liberty interest. *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991).

### (c)   Substantive Due Process

There are two theories under which a plaintiff may bring a substantive due process claim. The first theory requires the plaintiff to show that the state arbitrarily and capriciously deprived him of a property interest or liberty interest. *See Williams v. Texas Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993). The second theory requires the plaintiff to show that the

13

state engaged in conduct that "shocks the conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  Acts of physical brutality, such as rape, may violate substantive due process. *See Bennett v. Pippin*, 74 F.3d 578, 589 (5th Cir. 1996).  Alleged verbal harassment, however, does not violate substantive due process. *See Robertson*, 70 F.3d at 24 (threatening language and gestures do not violate due process) (citation omitted); *Costello v. Mitchell Pub. Sch. Dist.*, 266 F.3d 916, 921 (8th Cir. 2001) (berating student in front of class did not violate due process). This is because the Due Process Clause does not provide a remedy for ordinary tortious conduct. *See Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 126 (1992) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend to living together in society").

### (d)     Plaintiff's Allegations Do Not Implicate Due Process

**Alleged threats.**  Plaintiff subjectively believes and generally alleges that Zamora "disparag[ed]," "demeaned and humiliated" her. (Cmplt., p.12, ¶ 3.21.)  However, threats, verbal abuse, screaming, and the like do not violate due process. *See Robertson*, 70 F.3d at 24; *Costello v. Mitchell Pub. Sch. Dist.*, 266 F.3d 916, 921 (8th Cir. 2001) (cruel name-calling and striking plaintiff in the face with a notebook did not violate due process); *King v. Olmsted County*, 117 F.3d 1065 (8th Cir. 1997) ("Generally, mere verbal threats made by a state actor do not constitute a § 1983 claim") (citation omitted); *Pittsley v. Warish*, 927 F.3d 3 (1st Cir. 1991) (treating children "very badly" during arrest of their father did not violate substantive due process).

**Alleged deprivation of property interest in employment contract.**  Plaintiff vaguely claims that she was denied her protected property interest in her employment contracts and agreements with Defendant. (Cmplt., p. 18, ¶ 4.19.)  Plaintiff fails to state a claim, however, as an employee who alters her employment status of her own free will, even if prompted by events

14

set in motion by the employer, cannot establish that the state deprived her of the interest within the meaning of the due process clause. *See, e.g., Van Arsdel v. Texas A&M Univ.*, 628 F.2d 344, 346 (5th Cir. 1980) (stating that employee who chose to resign rather than to face public dismissal proceeding waived his right to due process); *Stone v. Univ. of Maryland Med. Sys.*, 855 F.2d 167, 173 (4th Cir. 1987) (same). Further, in the Fifth Circuit, a constructive discharge claim, where conditions are alleged as intolerable, is actionable as a procedural due process violation only if it amounts to a forced discharge to avoid affording pre-termination hearing procedures. *Rutland v. Pepper*, 404 F.3d 921, 923 (5th Cir. 2005). Plaintiff's Complaint contains no such allegation; thus, she has failed to state a claim on this point.

**Allegations relating to Plaintiff's "good name and reputation."** Plaintiff alleges that DCCCD deprived Plaintiff of her protected liberty interest in her good name and reputation. (Cmplt., p. 17, ¶ 4.18.) However, a liberty interest is implicated only if the defamatory statement was publicly released during the termination process rather than after the termination. *See Siegert*, 500 U.S. at 233-34; *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006); *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 144 (2d Cir. 1993). Plaintiff's Complaint contains no allegations indicating that DCCCD publicly disseminated false information regarding her.

**Allegations related to pursuit of Plaintiff's profession.** Plaintiff alleges that DCCCD somehow deprived Plaintiff of her ability to pursue her chosen profession. (Cmplt., p. 17, ¶ 4.18.) This vague and speculative allegation fails to state a claim. Not that Plaintiff has even alleged such facts, but due process is not implicated even when a former supervisor provides a defamatory reference to a prospective employer, thus preventing the plaintiff from being hired. *Siegert v. Gilley*, 500 U.S. 226 (1991) (no liberty interest was violated when former supervisor

15

told another employer that plaintiff was the most "inept and unethical" person he had ever supervised). Further, injury to reputation resulting in impairment of employment opportunity is not a protected liberty interest. *Id.* at 233. While DCCCD denies impairing Plaintiff's employment opportunities, even if it did, such conduct would not violate the Plaintiff's due process rights.

### C.   Plaintiff Has Failed to State a Claim for a Violation of Chapter 106 of the Texas Civil Practices and Remedies Code

Plaintiff alleges that DCCCD's actions violated Chapter 106 of the Texas Civil Practices and Remedies Code.[1] (Cmplt., p. 21) However, Texas appellate courts have determined that Chapter 106 does not address employment discrimination. *See Wright v. Texas Comm'n on Human Rights*, No. 03-03-00710 CV, 2005 Tex. App. LEXIS 5904, at *7-8 (Tex. App.--Austin July 27, 2005, pet. dism'd) (mem. op.); *see also Univ. of Texas v. Poindexter*, No. 03-04-00806 CV, 2009 Tex. App. LEXIS 5112, at *30 (Tex. App.--Austin July 3, 2009, no pet.). In so holding, the Austin Court of Appeals first examined the legislative history of Chapter 106 and noted that when the Legislature enacted the Texas Commission on Human Rights Act ("TCHRA") in 1983, it simultaneously repealed the employment discrimination language in Chapter 106's predecessor and moved that language into TCHRA. See *Wright,* 2005 Tex. App.

---

[1] Tex. Civ. Prac & Rem Code Chapter 106 provides:

   (a)   An officer or employee of the state or of a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin:
    (1)   refuse to issue to the person a license, permit, or certificate;
    (2)   revoke or suspend the person's license, permit, or certificate;
    (3)   refuse to permit the person to use facilities open to the public and owned, operated, or managed by or on behalf of the state or a political subdivision of the state;
    (4)   refuse to permit the person to use facilities open to the public and owned, operated, or managed by or on behalf of the state or a political subdivision of the state;
    (5)   refuse to grant a benefit to the person;
    (6)   impose an unreasonable burden on the person; or
    (7)   refuse to award a contract to the person.

Tex. Civ. Prac. & Rem. Code Ann. § 106.001(a) (West 2010).

16

LEXIS 5904 at *7 (internal citations omitted).  This language dealt with the refusal to employ or the discharge of a person because of race, religion, color, sex, or national origin.  *Id.*  What remains of Chapter 106 does not concern employment.  *Univ. of Texas v. Poindexter*, 2009 Tex. App. LEXIS 5112 at *29 (citing Tex. Civ. Prac. & Rem. Code Ann. §§ 106.001-.004).  DCCCD implores this Court to "follow the longstanding and proper reading of this section, which excludes a cause of action for employment-related discrimination" and dismiss Plaintiff's claim arising under Chapter 106 of the Texas Civil Practices and Remedies Code.

## IV.
## CONCLUSION

Wherefore, for the foregoing reasons, Defendant Dallas County Community College District moves for dismissal of all of Plaintiff's claims based on 42 U.S.C. § 1983 (Count Three, Count Four and Count Five) as well as dismissal of Plaintiff's claim based on Chapter 106 of the Texas Civil Practices and Remedies Code (Count Six).

Respectfully submitted,


  /s/ Katie Anderson
Katie Anderson
State Bar No. 00789631
katie.anderson@strasburger.com
M. Kasey Ratliff
State Bar No. 24041751
kasey.ratliff@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone:     (214) 651-4300
Facsimile:     (214) 651-4330

**ATTORNEYS FOR DEFENDANT**
**DALLAS COUNTY COMMUNITY COLLEGE**
**DISTRICT**

17

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on June 9, 2010, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Frank Hill
Michael Y. Kim
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, Texas  76013
fhill@hillgilstrap.com
mkim@hillgilstrap.com

/s/ Katie Anderson