UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DR. MATILDA SAENZ,                             §
                                               §
        Plaintiff,                             §
                                               §
v.                                             §          CIVIL ACTION NO. 3:10-CV-742
                                               §
DALLAS COUNTY COMMUNITY                        §
COLLEGE DISTRICT,                              §
                                               §
        Defendant.                             §

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

FRANK HILL              09632000
MICHAEL Y. KIM          24039960

HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas  76013
(817) 261-2222
(817) 861-4685 Facsimile
fhill@hillgilstrap.com
mkim@hillgilstrap.com

ATTORNEYS FOR PLAINTIFF

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.      SUMMARY ............................................................................................................ 1

II.     BACKGROUND FACTS ....................................................................................... 2

III.    ARGUMENTS AND AUTHORITIES .................................................................. 5

      A.     FRCP 12(b)(6) Standard ............................................................................ 5

      B.     Plaintiff has stated claims under 42 U.S.C. § 1983 ................................. 6

              1.     Plaintiff alleges and/or identifies a policymaker and/or policy. ................. 9

              2.     Plaintiff has shown a First Amendment violation.................................... 12

                    a.     Plaintiff's speech dealt with a matter of public concern.............. 12

                    b.     Plaintiff was not speaking as a part of her "official duties." ........ 14

              3.     Plaintiff has shown a Due Process violation............................................. 16

                    a.     Plaintiff had a protected property interest.................................... 16

                      b.     Plaintiff had a protected liberty interest....................................... 18

                      c.     Plaintiff has stated a claim under Chapter 106 of the Texas Civil Practice and Remedies Code ..................................... 21

PRAYER     .................................................................................................................. 23

CERTIFICATE OF SERVICE ........................................................................................ 24

## **TABLE OF AUTHORITIES**

## **Cases**

*Adickes v. S.H. Kress & Co.*,
    398 U.S. 144 (1970).................................................................................... 7

*Bd. of County Comm'rs of Bryan County v. Brown*,
    520 U.S. 397 (1997).................................................................................... 11

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................... 5, 6

*Bueno v. City of Donna*,
    714 F.2d 484 (5th Cir. 1983) ................................................................. 17, 18

*Bustos v. Martini Club Inc.*,
    599 F.3d 458 (5th Cir. 2010) ............................................................ 7, 8, 9, 10

*City of St. Louis v. Praprotnik*,
    485 U.S. 112 (1988).................................................................................... 11

*Collins v. City of Harker Heights*,
    503 U.S. 115 (1992)..................................................................................... 7

*Doe v. Dallas Indep. Sch. Dist.*,
    153 F.3d 211 (5th Cir. 1998) .............................................................. 6, 7, 8

*Ferguson v. Thomas*,
    430 F.2d 852 (5th Cir. 1970) .................................................................... 17

*Findeisen v. N.E. Indep. Sch. Dist.*,
    749 F.2d 234 (5th Cir. 1984) .................................................................... 16

*Garecetti v. Ceballos*,
    547 U.S. 410 (2006).................................................................................... 14

*Harris v. Victoria Indep. Sch. Dist.*,
    168 F.3d 216 (5th Cir. 1999) ............................................................... 10, 13

*James v. Collin County, Tex.*,
    561 F. Supp.2d 698 (E.D. Tex. 2007)....................................................... 13

*Joint Anti-Fascist Committee v. McGrath*,
    341 U.S. 123 (1951).................................................................................... 16

*Jones v. Greninger*,
    188 F.3d 322 (5th Cir. 1999) ..................................................................... 6

*Juarez v. Brownsville Indep. Sch. Dist.*,
  2010 WL 1667788  (S.D. Tex. April 23, 2010) ..................................................... 13

*Karage v. First Advantage Corp.*,
  2010 WL 1062601 (N.D. Tex. Mar. 22, 2010) ......................................................... 6

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ................................................................................... 6

*Lowrey v. Texas A&M Univ. Sys.*,
  117 F.3d 242 (5th Cir. 1997) ................................................................................... 5

*Lueck v. State*,
  2010 WL 2789543 (Tex. App.—Austin July 16, 2010, no pet. h.) ......................... 21

*Monell v. Dep't of Social Servs.*,
  436 U.S. 658 (1978)......................................................................................... 8, 10

*Neitzke v. Williams*,
  490 U.S. 319 (1989)................................................................................................ 6

*Ntreh v. Univ. of Tex. at Dallas*,
  936 S.W.2d 649 (Tex. App.—Dallas 1996), *judgm't modified on other grounds*,
  947 S.W.2d 202 (Tex. 1997), *and overruled on other grounds by*
  *Fed. Sign v. Tex. Southern Univ.*, 951 S.W.2d 401 (Tex. 1997)............................ 22

*Pembaur v. City of Cincinnati*,
  475 U.S. 469 (1986)....................................................................................... 10, 11

*Perry v. Sindermann*,
  408 U.S. 593 (1972)....................................................................................... 16, 17

*Peterson v. City of Fort Worth*,
  588 F.3d 838 (5th Cir. 2009) ................................................................................... 8

*Priester v. Lowndes County*,
  354 F.3d 414 (5th Cir. 2004) ............................................................................... 5, 6

*Republican Party of N.C. v. Martin*,
  980 F.2d 943 (4h Cir. 1992)..................................................................................... 6

*Rhyne v. Henderson County*,
  973 F.2d 386 (5th Cir. 1992) ............................................................................. 8, 10

*Rosenstein v. City of Dallas*,
  876 F.2d 392 (5th Cir. 1989) ........................................................................... 19, 20

iii

*Schweitzer v. Univ. Tex. Health Ctr.*,
    688 F. Supp. 278 (E.D. Tex. 1988) ...................................................................... 13

*Screws v. U.S.*,
    325 U.S. 91 (1945) ................................................................................................ 7

*Townsend v. Moya*,
    291 F.3d 859 (5th Cir. 2002) ............................................................................... 7

*U.S. v. Causey*,
    185 F.3d 407 (1999) .............................................................................................. 7

*Univ. of Tex. v. Poindexter*,
    306 S.W.3d 798 (Tex. App.—Austin 2009, no pet.) ............................................ 21

*Wells v. Doland*,
    711 F.2d 670 (5th Cir. 1983) ......................................................................... 19, 20

*Wells v. Hico Indep. Sch. Dist.*,
    736 F.2d 243 (5th Cir. 1984) ......................................................................... 19, 21

*Wright v. Tex. Comm'n on Human Rights*,
    2005 WL 1787428 (Tex. App.—Austin July 27, 2005, pet. denied) ..................... 21

**<u>Statutes</u>**
42 U.S.C. § 1983 ............................................................................ 1, 2, 7, 8, 9, 10, 22

**<u>Other Authorities</u>**
Chapter 106 of the Texas Civil Practice and Remedies Code ...................................... 1
Chapter 21 of the Texas Labor Code ........................................................................... 1
Federal Declaratory Judgment Act .............................................................................. 1
Section 106.001(a)(6) of the Texas Civil Practice and Remedies Code ..................... 22
Title VII ...................................................................................................................... 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. MATILDA SAENZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-742 |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR PARTIAL DISMISSAL**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Dr. Matilda Saenz, Plaintiff in the above-styled and numbered cause ("Plaintiff"), and files this, her Brief in Support of her Response to Defendant's Motion for Partial Dismissal, and would respectfully show the Court as follows:

**I.
SUMMARY**

1.1     Plaintiff has brought this suit against Dallas County Community College District, Defendant in the above-styled and numbered cause ("Defendant and/or "DCCCD"), asserting claims under and/or for Title VII (for discrimination and retaliation), Chapter 21 of the Texas Labor Code (for same), the United State Constitution through 42 U.S.C. § 1983 (violations of free speech and academic freedom, procedural and substantive due process, and equal protection), the Texas Constitution (violations of same), Chapter 106 of the Texas Civil Practice and Remedies Code, breach of contract, and the Federal Declaratory Judgment Act.

1.2     Defendant has filed a Motion for Partial Dismissal ("Defendant's Motion") and Brief in Support of Defendant's Motion ("Defendant's Brief"), seeking to dismiss all of

1

Plaintiff's claims brought under 42 U.S.C. § 1983 (Counts Three, Four, and Five), as well as Plaintiff's claim under Chapter 106 of the Texas Civil Practice and Remedies Code. *See generally* Defendant's Motion; Defendant's Brief. Plaintiff would point out that her claims under the Texas Constitution are included in Counts Three, Four, and Five of Plaintiff's First Amended Complaint ("Plaintiff's Complaint"), but they are not being brought under 42 U.S.C. § 1983, and Defendant is not challenging these claims at this time. *Id*. Plaintiff would also point out that Defendant is not challenging Plaintiff's equal protection or free speech retaliation claim, based on her speech about discrimination, on any grounds other than the policy/policymaker challenge for all of Plaintiff's claims under 42 U.S.C. § 1983. *See* Defendant's Brief, pp.6-16.

## II.
## BACKGROUND FACTS

2.1     On or about May 26, 2009, Plaintiff wrote and sent a memorandum to the Felix A. Zamora ("Zamora"), the president of Mountain View College ("MVC"), which is a part of DCCCD. *See* Plaintiff's Complaint, ¶ 3.1. Plaintiff also sent this memorandum to Dr. Wright Lassiter, Chancellor of DCCCD. *Id*. Defendant concedes that this was not a part of her duties. *See* Defendant's Brief, p.11. The memorandum concerned matters of public concern because it addressed fiduciary concerns and the adverse impact on student learning. *See* Plaintiff's Complaint, ¶ 3.1. Also, even though Plaintiff was directed not to discuss or provide the budget information to her deans at MVC, Plaintiff ultimately shared the information with the deans because of the fiduciary and student success concerns. *Id*. at ¶¶ 3.1-3.2, 3.7.

2.2     Upon seeing the memorandum and the fact that Plaintiff had gone around her normal reporting channels by sending it directly to Dr. Lassiter, Zamora immediately contacted and berated Plaintiff for her speech. *Id*. at ¶ 3.3. During the telephone conversation, Zamora called Plaintiff "hysterical," stated that Plaintiff's actions "bordered in insubordination" and that

he would "take that up later," and expressed his discriminatory attitude about being called into question by a subordinate female employee. *Id*. at ¶ 3.4. Zamora went on to state that the memorandum was "ridiculous" and "not appreciated." *Id*. at ¶ 3.5.

2.3     Subsequently, Zamora began his efforts to punish Plaintiff for her speech. *Id*. For example, on or about June 3, 2009, Zamora attended a meeting between Plaintiff and her staff, and during that meeting, Zamora expressed his extreme anger for Plaintiff copying Dr. Lassiter onto her memorandum. *See* Plaintiff's Complaint, ¶ 3.7. Immediately thereafter, Zamora punished Plaintiff by giving her a negative evaluation and placing her on a Performance Improvement Plan. *Id*. at ¶ 3.8. Prior to this evaluation, Zamora had given Plaintiff four (4) full years (2005-2008) of exemplary evaluations. *Id*. Nothing stated, expressed, or implied in the months prior and leading to the memorandum and the ensuing evaluation of June 3rd set up or gave any indication that the evaluation would be negative. *Id*.

2.4     The June 3rd evaluation represented a total departure from Zamora's previous evaluations, and it came immediately on the heels of the memorandum. *See* Plaintiff's Complaint, ¶ 3.8. Additionally, the poor evaluation was in complete contrast to the actual performance of Plaintiff during her time at MVC and DCCCD. *Id*. Moreover, as evidenced by a comparison of Plaintiff's previous evaluations with Zamora's negative evaluation, Zamora did not have a problem with Plaintiff's performance until she (a female) appeared to question his authority by raising fiduciary and student success concerns. *Id*.

2.5     Additionally, about a month after Plaintiff sent her memorandum, Plaintiff's husband was informed by MVC Administration that his contract was not going to be renewed. *Id*. at ¶ 3.9. On or about July 30, 2009, Plaintiff's husband received written notice that MVC

was nonrenewing his contract. *Id*. Prior to Plaintiff's memorandum, Plaintiff's husband had never received any complaints about his performance. *Id*.

2.6 Further, after Plaintiff sent her memorandum, Zamora began denying Plaintiff's requests to attend and participate in professional development opportunities, when in the past, Plaintiff was permitted to attend such development programs because they were in the best interests of MVC and its students and faculty. *See* Plaintiff's Complaint, ¶ 3.10. Zamora also began "building a file" against Plaintiff, and he would not even let Plaintiff know what to bring to or what was to be discussed at meetings purportedly involving the "improvement" of her performance, so Plaintiff could not prepare for them. *Id*. at ¶ 3.13.

2.7 As a result of the foregoing, Plaintiff filed a grievance against Zamora on or about November 13, 2009,[1] as well as a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 30, 2009 based upon gender discrimination and other retaliatory actions taken against Plaintiff. *See* Plaintiff's Complaint, ¶ 3.14. After Plaintiff filed her complaints, Zamora increased his efforts to punish her. *Id*. at ¶ 3.15. However, during this time, Zamora never gave Plaintiff any indication that her employment was in jeopardy. *Id*.

2.8 On or about March 11, 2010, the faculty at MVC voted "no confidence" in Zamora and cited the "climate of fear and mistrust at MVC" that Zamora instituted, as well as Zamora's "retaliatory actions against faculty, staff and administrators." *Id*. at ¶ 3.20. Despite notice of Zamora's retaliatory conduct through his authority as president of MVC (notice through the EEOC charge and the vote of "no confidence" by MVC's faculty members), Defendant never took any action to investigate and/or correct the conduct.

---

[1] The grievance was disregarded and/or ignored by DCCCD and MVC.

2.9     On or about March 26, 2010, Zamora informed Plaintiff that she was immediately suspended, instructed her to immediately remove all of her belongings and clear out from MVC that day, and informed Plaintiff that her contract was nonrenewed.  *Id*. at ¶ 3.21.  Defendant approved the nonrenewal of Plaintiff's contract, without giving her an opportunity for her complaints to be heard (previously filed grievance was ignored) and despite the fact that Plaintiff's revised "goals" for the year included a timeline of August 2010 for completion.  *Id*. Moreover, the immediate instruction to clear out her office that very same day forced her to be humiliated in front of her colleagues, and it created an atmosphere of disbelief at MVC.  *See* Plaintiff's Complaint, ¶ 3.21.

2.10    Prior to her memorandum and complaints, in which Plaintiff "went off campus" and outside normal channels, Plaintiff had been a valued colleague and employee of MVC and DCCCD.  *Id*.  As a result of the foregoing circumstances and conduct, Plaintiff had no choice but to retire.  As noted above, Defendant has created a policy of discrimination and/or retaliation against Plaintiff, which has been carried out by Zamora.  *See* Plaintiff's Complaint, ¶ 3.23.

2.11    To the extent necessary, Plaintiff hereby specifically references and incorporates herein each and every factual allegation set for in Plaintiff's Complaint by this specific reference.

### III.
### ARGUMENTS AND AUTHORITIES

**A.    FRCP 12(b)(6) Standard**

3.1     "A motion to dismiss under Rule 12(b)(6) is 'viewed with disfavor and is rarely granted.'"  *Priester v. Lowndes County*, 354 F.3d 414, 418 (5th Cir. 2004) (quoting *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997)).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  "The complaint is

liberally construed in the plaintiff's favor, and all well-pleaded facts in the complaint are taken as true."  *Id.*; *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232, 244 (5th Cir. 2009) (reiterating that the court "must accept as true the well-pleaded factual allegations in the complaint during the pleadings stage" and "must also draw all reasonable inferences in the plaintiff's favor"); *cf. Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

3.2     "The determining issue is not whether the plaintiff will ultimately prevail on the merits, but whether [s]he is entitled to offer evidence to support h[er] claim." *Priester v. Lowndes County*, 354 F.3d at 418.[2]  "Therefore, th[e] court will not dismiss a plaintiff's claim, 'unless the plaintiff will not be entitled to relief under any set of facts or any possible theory that [s]he could prove consistent with the allegations in h[er] complaint.'" *Id.* (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).   Moreover, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556.[3]

## B.     Plaintiff has stated claims under 42 U.S.C. § 1983

3.3     "Section 1983 provides injured plaintiffs with a cause of action when they have been deprived of federal rights under color of state law." *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998).  "The First Amendment, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and other provisions of the Federal Constitution afford

---

[2] *Cf. Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4h Cir. 1992) (holding that a motion to dismiss under Rule 12(b)(6) "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses"); *Karage v. First Advantage Corp.*, 2010 WL 1062601, at *2 (N.D. Tex. Mar. 22, 2010) ("A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; it does not resolve contested issues of fact, the merits of a claim, or the applicability of defenses."), *citing Martin*, 980 F.2d at 952.

[3] "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).

protection to employees . . . and § 1983 provides a cause of action for all citizens injured by an abridgment of those protections." *Collins v. City of Harker Heights*, 503 U.S. 115, 119-120 (1992). "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Id*. at 120.

3.4    "In order to state a valid claim under § 1983, Plaintiffs must '(1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person [or entity] acting under color of state law.'" *Doe*, 153 F.3d at 215; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) (holding that the plaintiff must show that the defendant deprived her of a secured constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory"). Also, a claim under 42 U.S.C. § 1983 does not require Plaintiff to prove an abuse of governmental power separate and apart from her proof of a constitutional violation, and no distinction is made between an abusive and non-abusive violation. *See Collins*, 503 U.S. at 119.

3.5    "To act 'under color' of law does not require that the accused be an officer of the State," and "[i]t is enough that he is a willful participant in joint activity with the State or its agents." *Adickes*, 398 U.S. at 151.[4]   A person "acts under color of state law if he 'misuses or abuses his official power' and if 'there is a nexus between the victim, the improper conduct, and [the person's] performance of official duties.'" *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (quoting *U.S. v. Causey*, 185 F.3d 407, 415 (1999)).

3.6    Additionally, "Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell v. Dep't of Social*

---

[4] *Accord Bustos v. Martini Club Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) ("Under 'color' of law means under 'pretense' of law," and "[a]cts of [those] performing their official duties 'are included whether they hew to the line of their authority or overstep it.'"), *quoting Screws v. U.S.*, 325 U.S. 91, 111 (1945).

*Servs.*, 436 U.S. 658, 690 (1978).  "Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Id*.  "Moreover, although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 "person," by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental "custom" even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id*. at 690-691.[5]

3.7     Defendant is liable under § 1983 when "execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Doe*, 153 F.3d at 215 (quoting *Monell*, 436 U.S. at 694). Also, even though Defendant can only act through its human agents and cannot be vicariously liable under 42 U.S.C. § 1983, Defendant can be liable for the acts of its "non-policy-making employees" if such employees were carrying out its policies when they acted.  *Rhyne v. Henderson County*, 973 F.2d 386, 392 (5th Cir. 1992).  Moreover, Defendant "can be held liable when the 'enforcement of a policy or practice results in a deprivation of federally protected rights.'"  *Bustos v. Martini Club Inc.*, 599 F.3d 458, 468 (5th Cir. 2010).

3.8     Defendant may also be liable for inaction and/or failure to act under color of law. "Under § 1983, to state a claim that inaction equates to action under color of state law when the alleged wrongdoer is not a supervisory governmental official, the plaintiff must identify 'some

---

[5] *Accord Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) ("Official policy establishes culpability, and can arise in various forms.  It usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is "so common and well-settled as to constitute a custom that fairly represents municipal policy.").

cognizable duty that state or federal law imposes upon the alleged 'enactor.'" *Bustos*, 599 F.3d at 466 (quoting *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996)).

      **1.     Plaintiff alleges and/or identifies a policymaker and/or policy.**

    3.9    Defendant argues that Plaintiff has not identified a policymaker or policy in order for her to bring claims under and/or pursuant to 42 U.S.C. § 1983. *See* Defendant's Brief, p.7. However, Plaintiff has alleged and/or identified both. For example, after Plaintiff spoke out about a matter of public concern, Plaintiff was reprimanded by being placed on a Performance Improvement Plan. *See* Plaintiff's Complaint, ¶ 3.8. Zamora did not just make up a policy under which he could place Plaintiff on a performance improvement plan. Instead, Zamora placed her on such a plan pursuant to Defendant's policies, procedures, and/or practices, and he took such action pursuant to his authority as president of MVC, vested in him by Defendant.

    3.10   As another example, after Plaintiff spoke out about a matter of public concern, the contract of Plaintiff's husband, who was also employed at MVC, was nonrenewed. *Id.* at ¶ 3.9. Zamora recommended the nonrenewal pursuant to his authority under Defendant's policies, procedures, and/or practices, and he took such action pursuant to his authority as president of MVC, vested in him by Defendant. Defendant approved of the nonrenewal decision or else it would not have carried forward.

    3.11   As another example, after Plaintiff spoke out about a matter of public concern and discriminatory practices, she was suspended, nonrenewed, and thrown off the MVC campus. *See* Plaintiff's Complaint, ¶ 3.21. Zamora took such actions against Plaintiff pursuant to his authority under Defendant's policies, procedures, and/or practice, and pursuant to his authority as president of MVC, vested in him by Defendant. Defendant approved of the nonrenewal decision or else it would not have been effective when Plaintiff was notified of it.

3.12    Therefore, Defendant is liable because Zamora was carrying out and/or enforcing Defendant's policies, procedures, and/or practices, when Plaintiff's federally protected right to exercise her First Amendment rights were violated.  *See Rhyne*, 973 F.2d at 392; *Bustos*, 599 F.3d at 468; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986) ("[W]here action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly."); *Monell*, 436 U.S. at 692, 694 (holding that 42 U.S.C. § 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights," and further holding that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983").

3.13    Additionally, Defendant is liable because it affirmed or approved the nonrenewal decisions.  *See Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 225 (5th Cir. 1999) (holding that the board's action in affirming an employment decision is an act that "may fairly be said to represent official policy" because of the board's status as a policymaker); *see also Pembaur*, 475 U.S. at 480 ("[I]t is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances," and "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body-whether or not that body had taken similar action in the past or intended to do so in the future-because even a single decision by such a body unquestionably constitutes an act of official government policy.").

3.14    Further, "when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies," and "[i]f the authorized policymakers approve a subordinate's

decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *see also Pembaur*, 475 U.S. at 481 ("If the decision to adopt that particular course of action is properly made by that government's authorized decisionmakers, it surely represents an act of official government "policy" as that term is commonly understood.").  Moreover, "the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the . . . action was the moving force behind the injury." *Bd. of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405 (1997).

3.15    As for the discriminatory acts of Zamora in denying Plaintiff professional development opportunities and holding Plaintiff, a female, to different standards by reprimanding her differently from the male employees under his supervision, Zamora was vested with the authority to use his discretion in making such day-to-day employment decisions at MVC, and Zamora was carrying out and/or enforcing Defendant's policies, procedures, and/or practices, which permitted that discretional authority.

3.16    Even if there were no "official" policy permitting the president of a campus with DCCCD to take day-to-day disciplinary actions and/or make day-to-day operational decisions at his campus, it was at the very least a common practice among the campus presidents of DCCCD. *See Brown*, 520 U.S. at 404 ("[A]n act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."); *cf. Pembaur*, 475 U.S. at 480-481 ("'[O]fficial policy' often refers to formal rules or understandings-often but not always committed to writing-that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time.").

## 2.    Plaintiff has shown a First Amendment violation.

3.17    Defendant asserts that Plaintiff has failed to show a First Amendment violation, based on a memorandum that she sent to Dr. Lassiter, because it purportedly did not deal with a matter of public concern and was distributed pursuant to her "official duties."  *See* Defendant's Brief, pp.9-12.  It is also important to note that Defendant has not challenged Plaintiff's First Amendment claim as to her speech involving her speaking out against discrimination on the part of Defendant, in the same manner as its challenge against the memorandum.  *See* Defendant's Brief, pp.9-12.  As to this particular First Amendment claim, Defendant is not challenging that such speech (about discriminatory employment practices) did not involve a matter of public concern or was conveyed pursuant to Plaintiff's "official duties."  *Id.*  Therefore, the arguments below only address Defendant's "public concern" and "official duty" attack on Plaintiff's First Amendment claim involving Plaintiff's memorandum.

### a.    Plaintiff's speech dealt with a matter of public concern.

3.18    Plaintiff's speech, for which she was punished, dealt with two subject matters dealing with issues of public concern: (1) budget concerns, involving the use and allocation of public funds at MVC (i.e., fiduciary concerns) and the adverse impact on student learning,[6] and (2) discrimination.  *See* Plaintiff's Complaint, ¶¶ 3.1, 3.14.

3.19    Defendant argues that the subject matter of Plaintiff's memorandum, involving budget concerns, covered nothing more than a "disagreement about the operations and functions of the college."  *See* Defendant's Brief, p.10.  Defendant also argues that Plaintiff's speech contained in the memorandum was just Plaintiff's "insistence on imposing [her] general policy

---

[6] Additionally, through her speech, Plaintiff was attempting to bring to light the adverse impact that would result to the instruction and services that had already contributed to student success initiatives at MVC.  *See* Plaintiff's Complaint, ¶ 3.2.

views on [her] superior." *Id*.  However, this is an incorrect characterization and portrayal of the publicly important speech contained within Plaintiff's memorandum.

3.20    Texas and other courts hold that speech such as that expressed in Plaintiff's memorandum is a matter of public concern.  *See Juarez v. Brownsville Indep. Sch. Dist.*, 2010 WL 1667788, at *8 (S.D. Tex. April 23, 2010) (holding a superintendent's allocation of taxpayer money to be a matter of great public concern); *James v. Collin County, Tex.*, 561 F. Supp.2d 698, (E.D. Tex. 2007) ("Speech that potentially affects an inappropriate use of the taxpayers' money relates to a public concern.").  As a sister court in Texas has pointed out:

> As a general matter, the discretionary nature of a public official's decisions in no way removes them from the arena of public debate.  Indeed, since time immemorial, the expenditure of public money logically has been the subject of continuing public concern.  It matters not that, in a particular case, a government official lawfully possesses the power to spend money (or, in the critic's eye, to waste money).  Similarly, the commonest theme in all political debate is the wisdom of the decisions, discretionary or otherwise, made by government officials.  No branch of government is above such criticism.  In a truly democratic society, the operations of all levels of government are fair game for public comment, and the right of a citizen to take exception to an act of his government lies at the core of the First Amendment.

*Schweitzer v. Univ. Tex. Health Ctr.*, 688 F. Supp. 278, 282 (E.D. Tex. 1988).

3.21    Additionally, the Fifth Circuit holds that "[a]nother factor considered in determining whether speech is on a matter of public concern is whether the comments were made against a backdrop of widespread debate in the community."  *Harris*, 168 F.3d at 222.  As set for in her complaint, as a culmination of the growing concerns about Zamora's conduct at MVC, the faculty at MVC ultimately voted "no confidence" in Zamora.  *See* Plaintiff's Complaint, ¶ 3.20.  Therefore, the fact that there was concern within the community of MVC regarding Zamora's conduct helps support the notion that Plaintiff's speech involved a matter of public concern.

### b.      Plaintiff was not speaking as a part of her "official duties."

3.22     If Plaintiff's speech involved a matter of public concern, Defendant argues that Plaintiff's speech is not protected because she purportedly made it in her "official capacity and as part of her official duties."  *See* Defendant's Brief, pp.10-11.  Defendant cites *Garecetti v. Ceballos*[7] for the proposition that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes."  *See Garecetti v. Ceballos*, 547 U.S. 410, 419 (2006).  Defendant then argues that the facts of this case are analogous to *Garcetti* because the employee (a prosecutor attorney) wrote an internal memorandum to his supervisor about how to proceed with a pending case.  *See* Defendant's Brief, p.11 (quoting *Garcetti*, 547 U.S. at 421).

3.23     However, Defendant's analogy is flawed.  To begin with, the employee in *Garcetti* wrote memorandums to his direct and immediate supervisor, and it was not addressed and/or delivered to anyone else by him.  *See Garcetti*, 547 U.S. at 414.  Moreover, it is important to note that in *Garcetti*, the employer argued and the court found that the employee "wrote his memo pursuant to his employment duties," which resulted in his speech not being afforded First Amendment protection.  *See Garcetti*, 547 U.S. at 415.  In stark contract, in this case, Defendant concedes that "Plaintiff was <u>not required</u> to author the [m]emorandum as part of her job," but instead, she chose to write and send it <u>voluntarily</u>.  *See* Defendant's Brief, p.11 (emphasis added).  More importantly, unlike the employee in *Garcetti*, Plaintiff sent her memorandum not only to her direct and immediate supervisor, but Plaintiff also sent it <u>directly</u> to the chancellor of the entire community college district, Dr. Lassiter, which was outside the course and scope of her normal and/or official duties.  See Plaintiff's Complaint, ¶¶ 3.1, 4.11-4.12.  Therefore, the facts

---

[7] 547 U.S. 410 (2006).

of this case are <u>not</u> analogous to *Garcetti*, as Defendant argues.

3.24    Although Defendant has conceded that "Plaintiff was not required to author the [m]emorandum as part of her job," but instead, she chose to write and send it <u>voluntarily</u>, Defendant argues that the speech is not protected because Plaintiff addressed Zamora in his capacity as president of MVC, listed her title when she signed the memorandum, authored it "under her official title," and disseminated it to Zamora from her "official email address." *See* Defendant's Brief, p.11.   However, those facts are not before this Court, and Defendant is attempting to interject purported facts that are not even contained in Plaintiff's live pleading in this case. *See generally* Plaintiff's Complaint.

3.25    Also, it undisputed that it was not a part of Plaintiff's "official duties" to make send her memorandum to the chancellor of the entire community college district (rather than to just her immediate supervisor, Zamora),[8] or at the very least, this a fact issue that may not be resolved through a motion to dismiss.   The fact that it was <u>not</u> a part of Plaintiff's "official duties" to express such concerns directly to the chancellor is evidenced by the following:

(1)    within hours of receiving the memorandum, which showed a copy going directly to the chancellor, Zamora contacted and berated Plaintiff, called her "hysterical," and told her that her actions "bordered [o]n insubordination" and that he would "take that up later;"

(2)    Zamora told Plaintiff that her memorandum was "ridiculous" and "not appreciated;"

(3)    after Plaintiff sent the memorandum to the chancellor, Zamora began continually retaliating, harassing, and/or otherwise causing harm to Plaintiff in every way he possibly could; and

(4)    on or about June 3, 2009, Zamora attended a meeting between Plaintiff and her staff, and during that meeting, Zamora acted unprofessionally and conducted himself in behavior unbecoming of a college president because he  was incensed

---

[8]    *See* Plaintiff's Complaint, ¶ 3.1 ("Dr. Wright Lassiter, Chancellor of DCCCD, was copied onto the memorandum.").

that Plaintiff had copied his supervisor, Dr. Lassiter (the chancellor), onto her
memorandum.

*See* Plaintiff's Complaint, ¶¶ 3.3-3.5, 3.7-3.8.

3.26    Additionally, Plaintiff's speech was made outside of her purported "duties," as
evidenced by the fact that she had shared vital budget information with deans at MVC, the very
same information that lead to her memorandum, despite the fact that Plaintiff was instructed not
to share such information with the deans because she was told that it "was not for the deans to
review." *Id*. at ¶¶ 3.1-3.2, 3.7.

### 3.    Plaintiff has shown a Due Process violation.

3.27    "The 'right to be heard before being condemned to suffer grievous loss of any
kind, even though it may not involve the stigma and hardships of a criminal conviction, is a
principle basic to our society.'" *Findeisen v. N.E. Indep. Sch. Dist.*, 749 F.2d 234, 237-238 (5th
Cir. 1984) (quoting *Joint Anti-Fascist Committee v. McGrath*, 341 U.S. 123, 168 (1951)
(Frankfurter, J., concurring)).

### a.    Plaintiff had a protected property interest.

3.28    "'[P]roperty' interests subject to procedural due process protection are not
limited by a few rigid, technical forms." *Perry v. Sindermann*, 408 U.S. 593, 601 (1972).
"Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or
understandings.'" *Id*. "A person's interest in a benefit is a 'property' interest for due process
purposes if there are such rules or mutually explicit understandings that support his claim of
entitlement to the benefit and that he may invoke at a hearing." *Id*. Additionally, "absence of
such an explicit contractual provision may not always foreclose the possibility that a [public
employee] has a 'property' interest in reemployment." *Id*.

3.29   "For example, the law of contracts in most, if not all, jurisdictions long has employed a process by which agreements, though not formalized in writing, may be 'implied.'" *Id*. at 601-602.   "Explicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in the light of the surrounding circumstances.'" *Id*. at 602.  Also, "a college can create an obligation as between itself and an [employee] where none might otherwise exist under the legal standards for the interpretation of contract relationships regularly applied to transactions in the marketplace if it adopts regulations or standards of practice governing nontenured employees which create an expectation of reemployment." *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th Cir. 1970).

3.30   Plaintiff contends that she had at least an implied contract of continued employment and/or a reasonable expectation to continued employment because, as alleged, Defendant placed her on a Performance Improvement Plain pursuant to its policies and procedures, with a timeline of August 2010 for completion.  *See* Plaintiff's Complaint, ¶¶ 3.8, 3.21.  Therefore, Plaintiff had until at least August 2010 before Defendant could decide whether or not to terminate or nonrenew Plaintiff's contract based on her compliance with the Performance Improvement Plan, which would have been too late for Defendant to nonrenew Plaintiff for the 2010-2011 academic year.

3.31   Defendant argues that because Plaintiff resigned, Plaintiff waived her right to procedural due process and cannot establish that Defendant deprived her of a property interest. *See* Defendant's Brief, p.15.  However, "resignation alone does not automatically constitute waiver of due process safeguards." *Bueno v. City of Donna*, 714 F.2d 484, 492 (5th Cir. 1983). As in *Bueno*, Defendant in this case did not advise Plaintiff of any opportunity for a meaningful hearing to challenge the adverse employment decision, but instead, Defendant informed Plaintiff

that she was immediately suspended, instructed Plaintiff to immediately remove all of her belongings and clear out from MVC that day, and that her contract would not be renewed. *See* Plaintiff's Complaint, ¶ 3.21. Plaintiff was forced to pack her office, clean her files, and to review her computer documents—all within hours. *Id*. Plaintiff's immediate "suspension from Mountain View College" created an atmosphere of disbelief at MVC. *Id*. Defendant's foregoing conduct, as well as the humiliation of Plaintiff from such actions, left Plaintiff with no other choice but to resign. "A forced resignation does not differ in legal impact from a discharge lacking volition in the choice to resign." *Bueno*, 714 F.2d at 492.

3.32     Additionally, Defendant violated Plaintiff's substantive due process because the manner in which it ended her employment and dismissed her from the MVC campus were arbitrary, capricious, and/or unreasonable, given the fact that Plaintiff had a history of exemplary performance prior to the lone negative evaluation, which was given to her as punishment for exercising her First Amendment rights, and the fact that she was in the middle of fulfilling the Performance Improvement Plan (and there was no indication that she was not in compliance and that her job was in jeopardy). Moreover, taking such action to deprive Plaintiff of her protected property interests in light of her complaints against Zamora and the vote of "no confidence," rather than investigating the concerns about Zamora before dismissing Plaintiff (based on the very actions of which Plaintiff complained – retaliatory evaluation), evidences a conduct that would "shock the conscience" of a reasonable mind.

### b.     Plaintiff had a protected liberty interest.

3.32     "It is now beyond any doubt that discharge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment." *Rosenstein v. City of Dallas*, 876 F.2d 392,

395 (5th Cir. 1989).  This principle also applies in the context of a nonrenewal because a public employee is entitled to procedural due process if the nonrenewal deprived her of a liberty interest.[9]  *See Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984) (reiterating that the public employees "were entitled to a hearing on the decision not to renew their contracts . . . if the nonrenewal deprived them of a liberty interest" in that "the stigma must be imposed by the state in connection with its denial of a right or status previously recognized by state law, such as the nonrenewal . . . , though loss of a property interest (such as tenured employment) is not required").

3.33    As such, "[t]he Supreme Court has made clear that a liberty interest arises in this context if the charges put one's reputation at stake, impugn one's good name, honor, or integrity or impose a stigma that will foreclose freedom to take advantage of other employment opportunities."  *Rosenstein*, 876 F.2d at 395 n.2; *see also Wells v. Doland*, 711 F.2d 670, 676 (5th Cir. 1983) ("When a public employer, in refusing to rehire an employee, makes charges against him that might seriously damage his standing in the community or otherwise imposes a stigma on the employee that forecloses his freedom to take advantage of other employment opportunities, the employee's liberty interest may be implicated.").  Additionally, "[t]he liberty protected by the due process clause encompasses an individual's freedom to work and earn a living."  *Doland*, 711 F.2d at 676. "To establish a liberty interest sufficient to implicate the fourteenth amendment's safeguards, the employee must show not only that he has been stigmatized, but that he was stigmatized in or as a result of the discharge process, [and] that the

---

[9] Although Plaintiff was informed that her contract would not be renewed, Plaintiff contends that she was constructively discharged and forced to resign given the fact that she was blind-sided by the news, she was suspended effective immediately, she was forced to quickly pack up all of her belongings from her office during regular business hours and in front of her co-workers, and she was thrown off and banned from the MVC campus that same day, all of which created an atmosphere of disbelief at MVC.  *See* Plaintiff's Complaint, ¶ 3.21.  Whether the Court finds that she was nonrenewed or constructively discharged, Plaintiff still asserts that she has a protected liberty interest that resulted in Defendant's violation of her procedural due process rights.

charges were made public." *Id.*[10]

3.34    Defendant contends that Plaintiff's due process claim based on a protected liberty interest fails because "Plaintiff's Complaint contains no allegations that DCCCD publicly disseminated false information regarding her." Defendant's Brief, p.15.    However, "[a]n employee may prove that the government agency is likely to make the charges public or that information about the charges is available to the public, although not publicized by the government." *Rosenstein*, 876 F.2d at 395 n.6.

3.35    As previously stated, Plaintiff's immediate suspension and banishment from MVC, Defendant's nonrenewal of Plaintiff despite a timeline of August 2010 for her completion of the Performance Improvement Plan, and Defendant forcing Plaintiff to immediately remove all of her belongings and clear out from MVC that day (forcing Plaintiff to pack her office, clean her files, and to review her computer documents—all within hours and during the regular hours of employment when her co-workers were present), created an atmosphere of disbelief at MVC. *See* Plaintiff's Complaint, ¶ 3.21.   There was no need for such hasty and humiliating action.

3.36    Given the foregoing circumstances surrounding Defendant's suspension and dismissal of Plaintiff from the MVC campus, Plaintiff was forced to suffer public humiliation in front of her peers and co-workers, which spread throughout MVC and caused disbelief that Plaintiff could do something so terrible to warrant such treatment.   As such, Plaintiff was publicly stigmatized in or as a result of Defendant's suspension and dismissal of Plaintiff from the MVC campus.   This infringed upon her protect liberty interest in her good name, reputation, honor, integrity, and personal and professional standing in the community college/higher education community that will foreclose her ability to pursue other employment opportunities

---

[10] Defendant does not raise the issue of whether or not Plaintiff was denied a meaningful hearing to clear her name. *See* Defendant's Brief, p.15.

and her livelihood in her chosen profession.[11]

3.37    As set forth above, Defendant deprived Plaintiff of her protected liberty interest, and Defendant did so in an arbitrary, capricious, and/or unreasonable manner.    Defendant violated Plaintiff's substantive due process because the manner in which it dismissed her from the MVC campus tarnished her good name and reputation, when no reason existed for such action.   It is shocking behavior for Defendant to treat a valued employee (at least prior to her speaking out) with such disregard given the fact that Plaintiff had a history of exemplary performance prior to the lone negative evaluation, which was given to her as punishment for exercising her First Amendment rights, and the fact that she was in the middle of fulfilling the Performance Improvement Plan (once again, there was no indication that she was not in compliance and that her job was in jeopardy).

**C.    Plaintiff has stated a claim under Chapter 106 of the Texas Civil Practice and Remedies Code**

3.38    Defendant contends that Plaintiff has failed to state a claim under Chapter 106 of the Texas Civil Practice and Remedies Code because this chapter purportedly does not apply to employment discrimination claims.   *See* Defendant's Brief, pp.16-17.   Defendant does not assert that Plaintiff's claim is otherwise lacking.   *Id*.

3.39    Although the Austin Court of Appeals holds that Chapter 106 does not cover employment discrimination claims,[12] the Texas Supreme Court has not ruled on this issue, and no other Texas appellate courts, except for the Dallas Court of Appeals, have ruled on this specific issue.   Contrary to the Austin Court of Appeals, the Dallas Court of Appeals holds that a

---

[11] As the Fifth Circuit holds, "it is not essential that the stigmatizing governmental charges *actually cause* the nonrenewal, only that they occur in connection with, and be closely enough related to, the employee's nonrenewal or discharge so as to cause that action to be stigmatizing."   *Wells*, 736 F.2d at 257 n.17.

[12] *See Lueck v. State*, 2010 WL 2789543, at *3 (Tex. App.—Austin July 16, 2010, no pet. h.); *Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 812-813 (Tex. App.—Austin 2009, no pet.); *Wright v. Tex. Comm'n on Human Rights*, 2005 WL 1787428, at *2 (Tex. App.—Austin July 27, 2005, pet. denied) (mem. op.).

plaintiff may assert an employment discrimination claim under and/or pursuant to Chapter 106. *See generally Ntreh v. Univ. of Tex. at Dallas*, 936 S.W.2d 649 (Tex. App.—Dallas 1996), *judgm't modified on other grounds*, 947 S.W.2d 202 (Tex. 1997), *and overruled on other grounds by Fed. Sign v. Tex. Southern Univ.*, 951 S.W.2d 401 (Tex. 1997).

3.40    In the *Ntreh* case, the plaintiff sued his former employer, the University of Texas at Dallas, under 42 U.S.C. § 1983 and Section 106.001(a)(6) of the Texas Civil Practice and Remedies Code,[13] asserting that the university had discriminated against him because of his race. *See Ntreh*, 936 S.W.2d at 649-651.   Similar to a university in one of the Austin cases, the university in the *Ntreh* case argued that the court lacked jurisdiction over an employment discrimination claim brought under Chapter 106.   *Compare Ntreh*, 936 S.W.2d at 651, *with Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 803 (Tex. App.—Austin 2009, no pet.).   The *Ntreh* Court held that it "had subject matter jurisdiction over [the] former employee's action against [the] university under [the] statute making it unlawful for [an] employee of or political subdivision of state acting or purporting to act in official capacity to impose unreasonable burden on person because of race, religion, color, sex, or national origin." *Ntreh*, 936 S.W.2d at 649, 654.

3.41    Similar to the plaintiff in the *Ntreh* case, Plaintiff is asserting a discrimination claim against her former employer, Defendant, under and/or pursuant to Chapter 106.   *See Plaintiff's Complaint*, pp.21, 25.   Therefore, this Court should not dismiss this claim because there is precedent supporting the Court exercising jurisdiction over Plaintiff's discrimination claim brought under and/or pursuant to Chapter 106.   Moreover, Plaintiff has pled sufficient and/or adequate facts to support her claim that Defendant discriminated against her in violation

---

[13] Section 106.001(a)(6) of the Texas Civil Practice and Remedies Code states that "[a]n officer or employee of the state or a political subdivision of the state who is acting or purporting to act in an official capacity may not, because of a person's race, religion, color, sex, or national origin: . . . (6) impose an unreasonable burden on the person." TEX. CIV. PRAC. & REM. CODE § 106.001(a)(6).

of Chapter 106, and Defendant does not dispute this point.  *See* Defendant's Brief, pp.16-17.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court deny Defendant's Motion for Partial Dismissal, in all things, but if the Court grants any portion of Defendant's Motion for Partial Dismissal, Plaintiff prays the Court to grant Plaintiff leave to amend her complaint before dismissing any of her claims with prejudice.  Additionally, Plaintiff prays the Court to grant her such other and further relief, both general and special, at law and in equity, to which Plaintiff may show herself to be justly entitled.

Respectfully submitted,

  /s/ Michael Y. Kim
Frank Hill                          09632000
Michael Y. Kim                      24039960

HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas  76013
(817) 261-2222
(817) 861-4685 Facsimile
fhill@hillgilstrap.com
mkim@hillgilstrap.com

ATTORNEYS FOR PLAINTIFF

23

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 23, 2010, I electronically filed the foregoing with the clerk

for the U.S. District Court, Northern District of Texas, using the CM/ECF system which will

send notification of such filing to case participants registered for electronic notice, including the

following counsel of record:

> Katie Anderson
> M. Kasey Ratliff
> STRASBURGER & PRICE, LLP
> 901 Main Street, Suite 4400
> Dallas, Texas  75202-3794
> (214) 651-4300
> (214) 651-4330 Facsimile
> katie.anderson@strasburger.com
> kasey.ratliff@strasburger.com.

     /s/ Michael Y. Kim
Michael Y. Kim