**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **DR. MATILDA SAENZ,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 3:10-CV-742-O** |
| | § | |
| **DALLAS COUNTY COMMUNITY** | § | |
| **COLLEGE DISTRICT,** | § | |
| | § | |
| Defendant. | § | |

**BRIEF IN SUPPORT OF DEFENDANT DALLAS COUNTY COMMUNITY COLLEGE
<u>DISTRICT'S AMENDED MOTION FOR PARTIAL DISMISSAL</u>**

KATIE ANDERSON
State Bar No. 00789631
katie.anderson@strasburger.com
M. KASEY RATLIFF
State Bar No. 24041751
kasey.ratliff@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone:   (214) 651-4300
Facsimile:    (214) 651-4330

ATTORNEYS FOR DEFENDANT
DALLAS COUNTY COMMUNITY
COLLEGE DISTRICT

# TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| TABLE OF CONTENTS | | i |
| TABLE OF AUTHORITIES | | ii |
| I. | SUMMARY | 1 |
| II. | PLAINTIFF'S ALLEGATIONS | 3 |
| III. | MOTION FOR PARTIAL DISMISSAL | 4 |
| | A. Rule 12(b)(6) Standard | 4 |
| | B. Plaintiff Has Failed to Plead a "Policy" or "Custom" Sufficient to Bring Constitutional Claims Against the District | 5 |
| |     1. No Policy Implicated for Constitutional Case | 7 |
| |     2. No Policymaker Identified for Constitutional Case | 11 |
| |     3. No Practice or Custom Identified for Constitutional Case | 13 |
| III. | CONCLUSION | 14 |
| CERTIFICATE OF SERVICE | | 15 |

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Beattie v. Madison County Sch. Dist.*,
254 F.3d 595 (5th Cir. 2001) ...........................................................................................11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................................4

*Bennett v. City of Slidell*,
728 F.2d 762 (5th Cir. 1984) (en banc) ............................................................................11

*Bolton v. City of Dallas*,
541 F.3d 545 (5th Cir. 2008) ............................................................................................11

*Bryan County v. Brown*,
117 S. Ct. 1382 (1997) ........................................................................................................5

*Causey v. Sewell-Cadillac-Chevrolet, Inc.*,
394 F.3d 285 (5th Cir. 2004) ..............................................................................................4

*Centeno v. City of Dallas*,
2008 WL 4137989 (N.D. Tex. Sept. 3, 2008) .....................................................................4

*Chavez v. Brownsville Indep. Sch. Dist.*,
135 F. App'x 664 (5th Cir. Jun. 15, 2005) ........................................................................11

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) ..........................................................................................................12

*Coggin v. Longview Indep. Sch. Dist.*,
337 F.3d 459 (5th Cir. 2003) ..............................................................................................7

*Cozzo*,
279 F.3d at 289 .................................................................................................................12

*Doe v. Dallas Indep. School Dist.*,
153 F.3d 211 (5th Cir. 1998) ..........................................................................................5, 6

*Doe v. Hillsboro Indep. Sch. Dist.*,
81 F.3d 1395 (5th Cir. 1996) ..............................................................................................4

*Fernandez-Montes v. Allied Pilots Ass'n*,
987 F.2d 278 (5th Cir. 1993) ..............................................................................................4

*Hill v. City of Pontotoc*,
   993 F.2d 422 (5th Cir. 1993) ...................................................................................................7

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ..................................................................................................................4

*In re Katrina Canal Breaches Litigation*,
   495 F.3d 191 (5th Cir. 2007) ...................................................................................................4

*James v. Collin County*,
   535 F.3d 365 (5th Cir. 2008) ...................................................................................................5

*Jett v. Dallas Independent School District,*
   7 F.3d 1241 (5th cir. 1993) ....................................................................................................12

*Lovelace v. Software Spectrum Inc.*,
   78 F.3d 1015 (5th Cir. 1996) ...................................................................................................5

*McKay v. D.I.S.D.*,
   No. 3:06-CV-2325-O, 2009 U.S. Dist. LEXIS (N.D. Tex. March 10, 2009) .........................13

*Owen v. City of Independence*,
   445 U.S. 622, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) ........................................................7

*Pembaur v. City of Cincinnati*,
   475 U.S. 469 (1986) ..............................................................................................................12

*Republican Party v. Dietz*,
   940 S.W.2d 86 (Tex. 1997) .....................................................................................................5

*Snyder v. Trepagnier*,
   142 F.3d 791 (5th Cir. 1998) .................................................................................................10

*Tex. Antiques Comm. v. Dallas County Cmty. Coll. Dist.*,
   554 S.W.2d 924 (Tex. 1977) ..............................................................................................6, 12

*Tharling v. City of Port Lavaca*,
   329 F.3d 422 (5th Cir. 2003) ...................................................................................................6

*United States ex. rel. Willard v. Humana Health Plan of Tex., Inc.*,
   336 F.3d 375 (5th Cir. 2003) ...............................................................................................4, 5

*Wilson v. Garcia*,
   471 U.S. 261 (1985) ................................................................................................................5

**STATUTES**

TEX. EDUC. CODE ANN. § 23.26 ...............................................................................................6, 12

TEXAS GOV'T CODE § 551.001 *et seq.* ..........................................................................................11

Texas Labor Code Chapter 21 ....................................................................................................3, 13

**RULES**

Fed. R. Civ. P. 12(b)(6)....................................................................................................................4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. MATILDA SAENZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:10-CV-742-O |
| | § | |
| DALLAS COUNTY COMMUNITY | § | |
| COLLEGE DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**BRIEF IN SUPPORT OF DEFENDANT DALLAS COUNTY COMMUNITY COLLEGE DISTRICT'S AMENDED MOTION FOR PARTIAL DISMISSAL**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW DALLAS COUNTY COMMUNITY COLLEGE DISTRICT ("the District"), Defendant in the above-styled and numbered cause, and files this its Amended Motion for Partial Dismissal of Plaintiff's Second Amended Complaint ("Complaint"), seeking dismissal of Plaintiff's Causes of Action, Counts Three, Four, Five and Six. This is an employment discrimination case for which ample recovery is available to Plaintiff should she met her burden to prove her Title VII and Texas Labor Code Chapter 21 allegations found in Plaintiff's Cause of Action, Counts One and Two, as well as her breach of contract claim found in Count Seven, none of which are challenged at this time and would remain even if this Motion is granted.

**I.
SUMMARY**

Plaintiff is a former employee of the District, a two year public undergraduate institution comprised of seven colleges and governed by a seven-member Board of Trustees. Plaintiff claims that Defendant violated her federal and state Constitutional rights and she seeks damages pursuant to 42 U.S.C. § 1983. Plaintiff also alleges violations of Chapter 106 of the Texas Civil

Practices and Remedies Code. Defendant originally moved for dismissal of these two categories of claims pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's First Amended Complaint failed to state a claim upon which relief can be granted. (See Def.'s Mot. for Partial Dismissal (ECF No. 6)).

On December 13, 2010, following the submission of the Parties' full briefing on Defendant's Motion for Partial Dismissal, the Court held a hearing on whether Plaintiff had pled a "policy" or "custom" sufficient to bring claims against the District under 42 U.S.C. § 1983. Although Plaintiff's counsel did not articulate a policy or custom at the hearing, Plaintiff's counsel advised the Court that it believed it could do so if given the opportunity. Thus, the Court agreed to allow Plaintiff an opportunity to amend her operative pleading for these limited purposes: (1) to clearly identify the District policy relied on by Plaintiff to support her 42 U.S.C. § 1983 claim; (2) to allege facts that demonstrate how the identified policy was the moving force behind Plaintiff's alleged Constitutional violations; and (3) to articulate how these facts implicate the District's Board of Trustees, the District's policymaker for purposes of a 42 U.S.C. § 1983 analysis. (Mot. for Partial Dismissal Hr'g Tr. 17:19-18:8, Dec. 13, 2010). Plaintiff failed to do so.

Plaintiff filed her Second Amended Complaint (ECF No. 29) on December 23, 2010. Defendant moves for dismissal of all of Plaintiff's federal and state Constitutional claims and 42 U.S.C. § 1983 claims pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiff's Second Amended Complaint still fails to state a claim upon which relief can be granted. Defendant limits the argument contained herein to the issue of whether Plaintiff has pled a "policy" or "custom" sufficient to bring claims against the District as required to maintain her Constitutional claims and as detailed in Section 1983 case law. Defendant incorporates the arguments contained in its

previous Motion for Partial Dismissal (ECF No. 6) and its Reply Brief in Support of same (ECF No. 18) herein by reference but does not repeat many of those points herein for the sake of economy and to avoid redundancy.  At this time, the District is not seeking a dismissal of Plaintiff's claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Texas Labor Code Chapter 21, and the Federal Declaratory Judgment Act (except as it regards Constitutional rights), as urged in Plaintiff's Causes of Action, Counts One, Two, Seven and Eight.

## II.
## PLAINTIFF'S ALLEGATIONS

Plaintiff amended her Complaint by adding an additional 21 pages to her last pleading. Nevertheless, her allegations remain the same.  Plaintiff is only complaining about employment decisions made by President Zamora – the same type of decisions made every day by governmental employers who have decision-making, but not policymaking, authority. Specifically, Plaintiff complains about her evaluation, assignment, reassignment (which Plaintiff misleadingly refers to as a suspension), and proposed non-renewal. Plaintiff also now complains that she had to attend meetings (Cmplt. ¶ 3.8.)  and could not go to all workshops she wanted to attend (Cmplt. ¶ 3.29), both of which exists for many employees and does not violate any Constitutional provision.  If Plaintiff's allegations are sufficient to turn this employment discrimination case into a Constitutional case, then almost every employment discrimination case would also be a Constitutional case, clogging the courts and confusing the issues.  A Constitutional claim is not stated just because a Policy is identified or implicated, as Policies are relevant to numerous decisions made daily by administrative personnel of governmental entities.

While Plaintiff has performed a very detailed review and analysis of District Polices, none of them are unconstitutional (nor even alleged to be) nor do any of them delegate

policymaking authority to any District employee, namely President Zamora. Plaintiff has failed to identify a policymaker who engaged in unconstitutional behavior, nor has Plaintiff identified a practice or custom that rises to the level of a policy for which Constitutional liability exists.

### III.
### MOTION FOR PARTIAL DISMISSAL

#### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) authorizes the dismissal of a case for failure to state a claim upon which relief can be granted if the complaint clearly demonstrates that the plaintiff cannot prove any set of facts that would entitle her to relief. Fed. R. Civ. P. 12(b)(6); *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401-02 (5th Cir. 1996). A motion under Rule 12(b)(6) should be granted if the Plaintiff "fails to plead enough facts to state a claim to relief that is plausible on its face." *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. *Causey v. Sewell-Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). "Nevertheless, dismissal is proper if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Centeno v. City of Dallas*, 2008 WL 4137989 *3 (N.D. Tex. Sept. 3, 2008) (citation and internal quotations omitted). Thus, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to avoid a motion to dismiss. *United States ex. rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 379 (5th Cir. 2003); *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). In making its determination, a court may consider documents attached to or incorporated in the complaint and matters of which

it could take judicial notice. *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *United States ex. rel. Willard*, 336 F.3d at 379.

### B. Plaintiff Has Failed to Plead a "Policy" or "Custom" Sufficient to Bring Constitutional Claims Against the District

Plaintiff's Causes of Action, Counts Three, Four and Five arise under 42 U.S.C. § 1983 and the federal and state Constitutions. (*See* Cmplt. 35-43.) Section 1983 provides a damages remedy to individuals whose Constitutional rights are violated by a person acting under color of state law. *See James v. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). The Texas Supreme Court has also held that state action is a prerequisite for Plaintiff's allegations arising under the Texas Constitution. *Republican Party v. Dietz*, 940 S.W.2d 86, 91 (Tex. 1997) ("Accordingly, based on the text of the Texas Bill of Rights, its history and purpose, our prior judicial decisions, the law in other jurisdictions, constitutional theory, and the concern for the liberty of all Texas citizens, we conclude that state action is required before a litigant can maintain a claim for deprivation of a right secured by the free speech, equal rights, and due course of law guarantees of the Texas Bill of Rights.") As such, the same standard applies to cases brought under either the federal Constitution or the state Constitution, which will be discussed collectively under Section 1983 progeny.

Section 1983 creates no substantive rights, but merely provides a remedy for the deprivation of existing constitutional or federal statutory rights. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985). Because *respondeat superior* liability is prohibited under Section 1983, the plaintiff must do more than show isolated constitutional violations by an entity's employees. *See Bryan County v. Brown*, 117 S. Ct. 1382, 1388 (1997). To prevail against the District, Plaintiff must show that the District's final policymaker maintained an unconstitutional custom, policy, or practice that was the "moving force" behind the Plaintiff's injury. *Id.* at 1389; *see also Doe v.*

*Dallas Indep. School Dist.*, 153 F.3d 211, 216 (5th Cir. 1998) (holding that the alleged constitutional violation must constitute the official act, policy or custom of the school district's board of trustees.) As has been previously, argued to the Court, the District's Board of Trustees is the sole policymaking authority for the District.[1]

The Court's stated, limited purpose in allowing Plaintiff to amend her operative pleading was to endeavor to see if Plaintiff could (1) clearly identify the District policy relied on by Plaintiff to support her 42 U.S.C. § 1983 claims; (2) allege facts that demonstrate how the identified policy was the moving force behind Plaintiff's alleged Constitutional violations; and (3) articulate how these facts implicate the District's Board of Trustees, the District's policymaker for purposes of a 42 U.S.C. § 1983 analysis. (Hr'g Tr. 17:19 - 18:8, Dec. 13, 2010). Thus, the question now before the Court is whether Plaintiff has pled a "policy" or "custom" sufficient to bring claims against the District because the alleged Constitutional violations were decisions that "may fairly be said to represent official policy." *See Doe*, 153 F.3d at 215. Despite numerous opportunities in the form of an original and first amended complaint, a brief in opposition to defendant's motion for partial dismissal, oral argument before the Court, and now a second amended complaint, Plaintiff is unable to provide the required allegations. It is clear that Plaintiff's recent amendment of her operative pleading is a desperate attempt by Plaintiff to stave off an appropriate dismissal of her § 1983 claims and to contort this employment discrimination case into a Constitutional case.

---

[1] The District was created in 1965 as authorized by section 130.005 of the Texas Education Code. *Tex. Antiques Comm. v. Dallas County Cmty. Coll. Dist.*, 554 S.W.2d 924, 925 (Tex. 1977). Its Board of Trustees "constitutes a body corporate" which may "sue and be sued" and has "the exclusive power to manage" the College District's affairs. *Id.* (*citing* TEX. EDUC. CODE ANN. § 23.26). It is settled law that the existence of official policymaker authority is a question of law to be decided by the Court. *Tharling v. City of Port Lavaca*, 329 F.3d 422, 427 (5th Cir. 2003).

Plaintiff's case is distinguishable from those cases where final policymakers clearly acted to deprive Plaintiffs of their federal rights, such as by passing a resolution or by voting.[2]

### 1. No Policy Implicated for Constitutional Case

Plaintiff's specification of the District Policies she challenges continues to be vague even after Plaintiff has doubled the size of her complaint. A full copy of the District's Policies can be found at http://www.tasb.org/policy/pol/private/057501/, and the District requests the Court to take judicial notice of the provisions on which Plaintiff attempts to base her Constitutional claims. Some of the purported "Polices" are actually Regulations, upon which the Board may not have voted or approved. See, e.g. DDC (Regulation), DGBA (Regulation), and DI (Regulation).

The District Policies cited by Plaintiff are the following, which are explained briefly and do not rise to unconstitutional provisions nor do they delegate policymaking authority to President Zamora or any other District employee:

**Policy DI (Local)** – Plaintiff alleges that this Policy states that "'[a]ll employees shall be subject to assignment and reassignment by the Chancellor or his designee.'" (Cmplt. ¶ 3.2.) The work assignments of employees are obviously accomplished by a lead administrator and not the Board. Such employment decisions do not rise to the level of policies for which the entity can be held to have violated a Constitutional right.

**DDC (Regulation)** –Plaintiff alleges that this Policy states that "'[a] supervisor shall make a written record of an employee's performance deficiencies through the College District's evaluation process,' and further, 'an employee may be suspended without notice,' with such

---

[2] *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 461 (5th Cir. 2003) (school board adopted resolution discharging plaintiff as district employee and Fifth Circuit held that board's termination without hearing resulted in due process violation); *Owen v. City of Independence*, 445 U.S. 622, 628-29, 100 S. Ct. 1398, 63 L. Ed. 2d 673 (1980) (city council passed resolution ordering city manager to take "appropriate action" against police chief and released investigative reports to news media without pre-termination hearing); *Hill v. City of Pontotoc*, 993 F.2d 422, 424 (5th Cir. 1993) (board of aldermen voted to terminate fire chief without due process).

discretion and authority delegated to Plaintiff's supervisor, President Zamora." (Cmplt. ¶ 3.49.) Administrators are tasked with evaluating employees. Doing so does not make them policymakers for which Constitutional liability ensues.

**HROG (Human Resource Operational Guidelines)** - Plaintiff alleges that these guidelines vest President Zamora with the specific authority to take the actions that he did with respect to the performance improvement plan. (Cmplt. ¶ 3.11.) Plaintiff also alleges that these guidelines granted President Zamora "final authority" to make decisions regarding employee grievances. (Cmplt. ¶ 3.21.) Plaintiff further alleges that these guidelines state that "'[s]uspension without notice may occur at any time during the employee warning system process,' and '[a]ll suspensions without notice must be reviewed by the Associate Vice Chancellor or designee and the location Human Resources Director or equivalent position before the suspension occurs.'" (Cmplt. ¶ 3.49.) Plaintiff further alleges that these guidelines state that "'the supervisor will confirm the actions in writing to the employee.'" (Cmplt. ¶ 3.49.) Again, these procedures for employment-related decisions delegating decision-making authority to District employees does not rise to the level of policymaking authority that is solely possessed by the Board of Trustees. Even more importantly, these guidelines apply to professional support staff, not Plaintiff. See District Policy DD (Local).

**Policy DOA (Local)** - Plaintiff alleges that this Policy states that "'[r]etaliation may also include threats, unjustified negative evaluations,…or increased surveillance.'" (Cmplt. ¶ 3.12.) This Policy prohibits retaliatory conduct in District employment-related decisions and prohibits the sort of retaliation that Plaintiff alleged occurred. This Policy does not give rise to a § 1983 claim. If merely having this Policy is sufficient to subject an entity to Constitutional liability, then most governmental entities would do well to delete the Policy. Additionally, if a plaintiff

merely has to claim retaliation and the existence of a retaliation policy to have a Constitutional claim, then every retaliation claim would rise to a Constitutional claim. That is not the law nor should this Court expand the law to be so.

**DGBA (Regulation)** – Plaintiff alleges that this provision granted President Zamora "final authority" to make decisions regarding employee grievances. (Cmplt. ¶ 3.21.) This regulation relates to decision-making authority vested in District employees not the power to make policy. The regulation states when a grievance must be made in order to be timely. To now allege that President Zamora inappropriately disallowed Plaintiff's grievance, which was not timely filed, is disingenuous and misleading and does not implicate a Constitutional violation.

**DI (Regulation)** –Plaintiff alleges that this regulation states that "'[a]dministrative personnel may be assigned, reassigned, or transferred to any College or College District location during their contractual term with the College District. Such reassignment or transfer may involve other or additional duties for which an administrator is qualified to perform.'" (Cmplt. ¶ 3.50.) Plaintiff further alleges that this Policy states that "'[a] college president may identify positions that may be eliminated at the College District.'" (Cmplt. ¶ 3.51.) Plaintiff further notes that this regulation "also states what is to occur '[w]hen a College President eliminates a particular position.'" (Cmplt. ¶ 3.51 n.8.) Plaintiff also alleges that this regulation vests President Zamora with the delegated authority "to approve transfers, thereby vesting his [sic] with the authority to decide who may or may not be transferred, but also with the policymaking authority to set the criteria upon which such a decision is made…" (Cmplt. ¶ 3.50.) Administrators are tasked with making judgments regarding the distribution of District employees among various roles and at the various District campuses. Doing so does not make

them policymakers for which Constitutional liability ensues. Notably, most of the provisions cited by Plaintiff regard only professional support staff, not a Vice President like Plaintiff.

**Policy DMAB (Legal)** – Plaintiff alleges that this Policy states that "'[t]he Board may decide by vote or inaction not to offer any employee further employment with the College District beyond the term of the Contract.'" (Cmplt. ¶ 3.56.) Plaintiff further admits that the Board took no action. It is undisputed that Plaintiff resigned before President Zamora's proposed non-renewal was acted upon by the Board. Thus, the District is not liable pursuant to this Policy.

**Policy DOA (Legal)** – Plaintiff alleges that this Policy states that "'[a] College District is responsible for the acts of unlawful harassment by fellow employees . . . if the College District, its agents, or its supervisory employees knew or should have known of the conduct.'" (Cmplt. ¶ 3.60.) This Policy properly reflects employment law, which is found in Title VII and governed by that provision, not Constitutional law or Section 1983.

These Policies address how the District assigns decision-making authority to its administrators and human resources personnel. The Policies cited by Plaintiff are not alleged by Plaintiff to be unconstitutional. Plaintiff does not sufficiently allege how any of these Policies were the moving force behind the injuries she claims. Now is her time to do it, and the Court has given her ample opportunity. It is imperative that the Policies for which section 1983 liability is sought be specified in the trial court. Otherwise, the line between *respondeat superior* liability and truly unconstitutional conduct quickly blurs, and the intent of section 1983 is forsaken. *See Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998). Plaintiff has been asked by this Court to make specific allegations regarding the Policies on which she relies for her § 1983 claims. Now that she has attempted to do so by identifying numerous Policies, it is clear that the cited

Policies will not support Plaintiff's alleged Constitutional claims against the District, which must be dismissed.

### 2. No Policymaker Identified for Constitutional Case

Although Plaintiff admits that the District's Board of Trustees took no action and made no Policy that was facially unconstitutional, Plaintiff infers that the Board of Trustees must have considered the non-renewal of Plaintiff's contract because the employment decisions at issue were allowed to happen (i.e. they were not stopped by the Board). It is not entirely clear but appears that Plaintiff may be arguing that the Board of Trustees gave some sort of tacit approval. However, the Board of Trustees can only take action by voting in a properly noticed and called open meeting where a quorum of members are present. *See* TEXAS GOV'T CODE § 551.001 *et seq.* Plaintiff's Complaint admits that no such action is noted in any minutes from meetings during the relevant time frames.

Furthermore, Plaintiff offers only conclusory allegations regarding actions taken by a litany of alleged state actors which now allegedly include the District's Chancellor, the District's Human Resources Department, and even the District's Legal Counsel. Plaintiff's allegations improperly argue that the District employees can never act without the Board of Trustee's authority and that campus-level employment decisions constitute state action through a state actor that rises to the level of policymaking. That is not the law.[3]

---

[3] The Fifth Circuit Court of Appeals has noted that "there exists a meaningful distinction between policymaking and decision making." *Chavez v. Brownsville Indep. Sch. Dist.*, 135 F. App'x 664, 679 (5th Cir. Jun. 15, 2005); *Bolton v. City of Dallas*, 541 F.3d 545, 549 n.3 (5th Cir. 2008) ("For example, the County Sheriff may have discretion to hire and fire employees without also being the county official responsible for establishing county employment policy."). Just as the authority to make final individual personnel decisions does not constitute an assignment of policymaking power, *see, e.g.*, *Id.* at 550-51 (holding that final decision maker cannot render the city liable where plaintiff cannot show that he was vested with policymaking power), any authority possessed by President Zamora or other District employees to reprimand MVC employees or to make individual personnel decisions likewise does not constitute an assignment or act of policymaking power of the District Board of Trustees. See *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 602-03 (5th Cir. 2001) (finding no delegation to superintendent because she could only recommend termination to school board); *Bennett v. City of Slidell*, 728 F.2d 762, 770 (5th Cir. 1984) (en banc) (holding that decisions that were "perhaps discretionary and ministerial" did not constitute policymaking).

For an isolated decision to constitute a policy for the purposes of § 1983, the Fifth Circuit requires a plaintiff to show that "the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered." *Cozzo*, 279 F.3d at 289. *See also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). Plaintiff cannot meet her burden of properly pleading a policy or custom sufficient to demonstrate that a District policymaker with final authority in this matter is at issue.[4]

Since the identified employees are not policymakers, Plaintiff also contends that the District's Board of Trustees delegated to these employees the authority to make unilateral decisions regarding discipline and the hiring or termination of employees. If in this case, as in *Jett*, the Board did delegate decision-making power to these employees,[5] there still exists a meaningful distinction between policymaking and decision making. *See Jett*, 7 F.3d at 1246 (noting that simply because the superintendent "may have been delegated the final decision in the cases of protested individual employee transfers does not mean that he had or had been delegated the status of policymaker, much less final policymaker, respecting employee transfers"). *See also Praprotnik*, 485 U.S. at 129-30 (citing a hypothetical from *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 n.12 (1986) noting that if policymakers set the policy, only the decisions of those persons or bodies would provide a basis for liability and that this would be true even if the policymakers delegated discretion to hire and fire employees to others who

---

[4] The Fifth Circuit's opinion in *Jett v. Dallas Independent School District* is directly analogous and established that the Board of Trustees of a Texas independent school district holds sole policymaking authority for the District such that the District could not be liable for the employment decisions made by the superintendent. *Jett*, 7 F.3d 1241 (5th Cir. 1993). The Fifth Circuit stated that the final policymaking authority in an independent school district rests with the District's board of trustees and that nothing in statute purports to give a superintendent any policymaking authority or power to make rules or regulations. *See Jett*, 7 F.3d at 1245. Similarly, the District employees alleged by Plaintiff are not vested with any policymaking authority by either statute or express authorization by the District's Board. *See, e.g. Tex. Antiques Comm. v. Dallas County Cmty. Coll. Dist.*, 554 S.W.2d 924, 925 (Tex. 1977) (citing Tex. Educ. Code Ann. § 23.26).

[5] As stated in the District's Notice of Clarification, (ECF No. 27), the Board of Trustees was vested with the final authority for approving any non-renewals or terminations.

exercised that discretion in an unconstitutional manner). Granting campus or district administrators or human resource personnel with the authority to make individual personnel decisions does not constitute an assignment of policymaking power as argued by Plaintiff and does not subject the District to vicarious liability. Further, the *Jett* case also stands for the proposition that simply going along with (or not objecting to) discretionary decisions made by a policymaker's subordinates is not a delegation to them of the authority to make policy.

### 3.    No Practice or Custom Identified for Constitutional Case

Finally, Plaintiff alleges the existence of a District custom that gives rise to liability under Section 1983. Unless the Policy relied on by Plaintiff has been officially promulgated, proof must show a customary, "persistent, widespread practice…so common and well settled as to constitute a custom that fairly represents municipal policy," of which the policymaker has "[a]ctual or constructive knowledge." *McKay v. D.I.S.D.*, No. 3:06-CV-2325-O, 2009 U.S. Dist. LEXIS, at *8 (N.D. Tex. March 10, 2009). At best, Plaintiff has alleged that President Zamora's managerial style was subject to criticism as evidenced by a faculty "no confidence" vote. The "no confidence" vote did not allege facts that would indicate that President Zamora customarily engaged in the violation of District employees' Constitutional rights or even that he regularly (or ever) discriminated on the basis of sex, which is the premise on which all of Plaintiff's allegations are based. In this lawsuit, Plaintiff makes no allegation of any other unconstitutionally motivated employee transfer, non-renewal or performance improvement plan based on sex discrimination or retaliation other than hers and her husbands, both of which she claimed were made by President Zamora as retaliation and/or discrimination against Plaintiff.

**III.**
**CONCLUSION**

Wherefore, for the foregoing reasons, Defendant Dallas County Community College District moves for dismissal of all of Plaintiff's claims based on 42 U.S.C. § 1983 and Texas Labor Code Chapter 21 (Count Three, Count Four and Count Five) as well as dismissal of Plaintiff's claim based on Chapter 106 of the Texas Civil Practices and Remedies Code (Count Six).

Respectfully submitted,

/s/ Katie Anderson
Katie Anderson
State Bar No. 00789631
katie.anderson@strasburger.com
M. Kasey Ratliff
State Bar No. 24041751
kasey.ratliff@strasburger.com
STRASBURGER & PRICE, LLP
901 Main Street, Suite 4400
Dallas, Texas 75202-3794
Telephone:    (214) 651-4300
Facsimile:    (214) 651-4330

**ATTORNEYS FOR DEFENDANT**
**DALLAS COUNTY COMMUNITY COLLEGE**
**DISTRICT**

## **CERTIFICATE OF SERVICE**

       This is to certify that on January 10, 2010, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Frank Hill
Michael Y. Kim
Hill Gilstrap, P.C.
1400 West Abram Street
Arlington, Texas  76013
fhill@hillgilstrap.com
mkim@hillgilstrap.com


                                                /s/ Katie Anderson