UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. MATILDA SAENZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:10-CV-742-O |
| | § | |
| DALLAS COUNTY COMMUNITY COLLEGE DISTRICT, | § § § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Dallas County Community College District's ("DCCCD") Amended Motion for Partial Dismissal and Brief in Support (ECF Nos. 30 & 31), filed on January 10, 2011, Plaintiff's Response and Brief in Support (ECF Nos. 36 & 37), and Defendant's Reply (ECF No. 39). Additionally, both Parties incorporate by reference the motion and related briefing from Defendant's original Motion for Partial Dismissal and Brief in Support (ECF Nos. 6 & 7), including Plaintiff's Response and Brief in Support (ECF Nos. 16 & 17) and Defendant's Reply (ECF No. 18). Defendant moves to dismiss Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 and Chapter 106 of the Texas Civil Practices and Remedies Code for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Def. Am. Mot. Dismiss, ECF No. 30. Having reviewed Defendant's Motion, the Court finds that it should be and is hereby **GRANTED** for the reasons stated below.

**I.    Procedural Background**

Defendant DCCCD filed its first Motion for Partial Dismissal (ECF No. 6) on June 9, 2010. The Court held a hearing on December 9, 2010 discussing whether Plaintiff had alleged a policy or

custom sufficient to state a claim under § 1983. *See* ECF No. 26. At the hearing, the Court granted Plaintiff leave to amend her complaint so as to identify a policy, show how that policy was the moving force behind the constitutional violations, and clarify how the facts implicate the DCCCD Board of Trustees. *See* Hearing Tr., Dec. 17, 2010, ECF No. 28. Plaintiff filed a Second Amended Complaint (ECF No. 29) on December 23, 2010, and Defendant filed an Amended Motion for Partial Dismissal (ECF No. 30) on January 10, 2011.

## II. Factual Background

Plaintiff Dr. Matilda Saenz brings the instant case against DCCCD as a result of actions taken against her while she served in the position of Vice President of Instruction for Mountain View College ("MVC"), part of DCCCD. 2d Am. Compl. ¶ 3.5, ECF No. 29. In May 2009, Plaintiff and five other instructional/academic deans at MVC wrote and submitted a memorandum (the "memo") to the President of MVC, Felix Zamora ("Zamora"), describing their fiduciary and budgetary concerns. *Id.* ¶ 3.1. They copied Dr. Wright Lassiter, Chancellor of DCCCD, on the memo. After receiving the memo, Zamora spoke to Plaintiff on the phone and expressed his displeasure over her actions, calling Plaintiff and the other deans involved "hysterical." *Id.* ¶ 3.7.

Plaintiff alleges several acts of a retaliation from Zamora because of the memo. After four years of exemplary evaluations, Zamora gave Plaintiff a negative evaluation and placed her on a performance improvement plan ("PIP"). *Id.* ¶¶ 3.11-2.12. He informed her that her contract would not be renewed if she refused to sign that plan. *Id.* ¶ 3.14. Zamora rarely informed Plaintiff of the PIP meetings in a timely manner and did not allow her to prepare sufficiently. *Id.* ¶ 3.20. He also assigned her work without giving her advanced notice of large projects. *Id.* ¶ 3.26. In July 2009, Plaintiff's husband received written notice that MVC was not renewing his contract. *Id.* ¶ 3.15.

Additionally, Plaintiff alleges that Zamora denied her professional development opportunities such as attending training programs. *Id.* ¶¶ 3.17-3.19, 3.28-3.30.

In November 2009, Plaintiff filed a grievance with DCCCD's Human Resources Department and Legal Counsel, but she was informed that she could not pursue the grievance. *Id.* ¶ 3.21. During the same month, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") based on discriminatory and retaliatory actions taken by Zamora. *Id.* ¶ 3.23. Plaintiff's complaint distinguishes the manner in which Zamora treated several male deans from how he treated Plaintiff. *Id.* ¶ 3.32. One male dean refused to do certain work, and Plaintiff did the work for him while Zamora took no disciplinary measures. *Id.* ¶¶ 3.32-3.33. Another male dean was supposed to help Plaintiff with a project and when he elected not to participate, Zamora did not intervene. *Id.* ¶ 3.34. Unlike her male colleagues, Plaintiff was required to send out an administrator-in-charge email notification when she was absent from work. *Id.* ¶ 3.35.

On March 11, 2010, the faculty of MVC held a "no confidence" vote and created a "Summary of Grievances" which included Zamora's "disruptive disagreement with the Vice President of Instruction [Plaintiff]", decisions "foster[ing] a climate of fear and mistrust", "chilling effect on freedom of discussion", and "retaliatory actions against faculty," among other complaints. *Id.* ¶¶ 3.37-3.39. In response to the no confidence vote, DCCCD's authorized spokesperson made a statement as did Zamora regarding the faculty's concerns. *Id.* ¶¶ 3.41-3.42. Due to these events, Plaintiff alleges that she felt she had no choice but to retire from MVC. *Id.* ¶ 3.55.

On March 26, 2010, Zamora informed Plaintiff that she was suspended and instructed her to removal all belongings from MVC. *Id.* ¶ 3.45. She was presented with a letter stating that her position at MVC would end on August 31, 2010, and she would not receive a subsequent contract.

*Id.* ¶ 3.47. Zamora also sent out a memorandum to everyone at MVC notifying them that Dr. Saenz would be reassigned to work at the District Office and that she would be replaced. *Id.* ¶ 3.53. Throughout her complaint, Plaintiff mentions several Board meetings during some of which "personnel matters" were discussed. In addition, she mentions a meeting in March 2010 in which the Board discussed "a legal matter." *Id.* ¶ 3.36. However, no further specifications were given. *Id.* ¶¶ 3.22, 3.24, 3.36, 3.56.

### III. Legal Standards

#### A. Rule 12(b)(6)

To defeat a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S.Ct. 1937, 1949 (2009). The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mutual Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion

to dismiss. *Iqbal*, 129 S.Ct. at 1949-50. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

In ruling on a motion to dismiss under 12(b)(6), the Court cannot look beyond the pleadings. *Spivey v. Robertson,* 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000). Likewise, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Id.*

### B. 42 U.S.C. § 1983 Municipal Liability

To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate: (1) a violation of the United States Constitution or federal law; and (2) that the violation was committed by someone acting under color of state law. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252-53 (5th Cir. 2005). Municipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001). A municipality cannot be held liable under § 1983 on the basis of *respondeat superior. Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 415-16 (1997).

The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court clearly emphasizes the necessity of an official policy as a predicate

to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or those edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578. Determination of who may be found liable as a "policymaker" is a matter of state law. *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989). In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; she must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *see Lawson v. Dall. Cnty.*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right.").

**IV. Analysis**

Defendant moves to dismiss Counts Three, Four, Five, and Six of Plaintiff's complaint, including the claims based on § 1983 as well as that based on Chapter 106 of the Texas Civil Practices and Remedies Code.

**A. Municipal Liability Under § 1983**

Plaintiff alleges that the DCCCD is liable under § 1983 for violations of Plaintiff's First Amendment right to free speech and academic freedom, Fifth and Fourteenth Amendment Rights to procedural and substantive due process, and Fourteenth Amendment right to equal protection. 2d Am. Compl. ¶¶ 4.8- 4.29. In order for Plaintiff's constitutional claims to survive a motion to

dismiss, Plaintiff must plead facts sufficient to show municipal liability under the *Monell* test. Accordingly, Plaintiff must show (1) a policymaker; (2) a policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *Monell.*, 436 U.S. at 694.

### 1. Policymaker

A policymaker is one who "speak[s] with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1247 (5th Cir. 1993). "Whether a particular official has 'final policymaking authority' is a question of state law." *Id.* (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). DCCCD came into existence in 1965 pursuant to section 130.005 of the Texas Education Code. *Tex. Antiques Comm. v. Dall. Cnty. Cmty. College Dist.*, 554 S.W.2d 924, 925 (Tex. 1977). The Board of Trustees is a "body corporate" which can "sue and be sued" and has "the exclusive power to manage" the College District's affairs. *Id.* (citing Tex. Educ. Code Ann. § 23.26, repealed and reenacted as § 11.051). Accordingly, the Board of Trustees is the policymaker of the DCCCD. However, a governing body may delegate through: (1) express statement or formal action or (2) conduct or practice encouraging the agent in a policy-making role. *Zarnow v. City of Wichita Falls, Tex*, 614 F.3d 161, 167 (5th Cir. 2010) (citing *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).

There has been no indication that the Board of the DCCCD made an express statement or formal action delegating such authority to Zamora so any delegation would have to be through conduct or practice. *See id.* A person who has been delegated such authority must be one who "takes the place of the governing body in a designated area of city administration" rather than just a decisionmaker implementing another's policies. *See id.* at 167 (quoting *Webster v. City of Hous.*,

735 F.2d 838, 841 (5th Cir. 1984)). A policymaker must decide the goals for a particular city or municipality to function and must devise the means of achieving those goals. *Id.* The fact that an individual's decision is final, is not sufficient to make him a policymaker because permitting municipal liability based on customs of all officers with final or supervisory power would lead to vicarious liability. *Jett*, 7 F.3d at 1247; *Bolton v. City of Dall.*, 541 F.3d 545, 549-50 (5th Cir. 2008). While the ability to make the final decision does not make one a policymaker, nor does the existence of administrative review foreclose the finding of delegated authority. *Zarnow*, 614 F.3d at 168 (citing *Bennett*, 728 F.2d at 769).

Defendant argues that neither Zamora nor any of the other individuals mentioned by Plaintiff, including the District's Chancellor, Human Resources Department, and Legal Counsel, were delegated authority to the extent necessary to make them policymakers. Def. Br. Supp. Am. Mot. Dismiss 11, ECF No. 31. Defendant's brief states that any authority possessed by Zamora to make personnel decisions is not an assignment of policymaking power but instead is decisionmaking power under the analysis in *Jett*. *Id.* at 12-13. Plaintiff's response looks to DCCCD's description of Zamora's job for authority that he is a policymaker. Pl. Br. Supp. Resp. Am. Mot. Dismiss ¶ 3.21. As MVC's president, Zamora's responsibilities include (1) responsibility for the overall operation of the college and (2) development of the college budget and supervision of key administrators within the guidelines of the DCCCD. *Id.*

The Fifth Circuit has, on several occasions, found that a superintendent of an independent school district, a position analogous to the president of a college in the DCCCD, is not a policymaker under Texas law. *See Barrow v. Greenville Independent School District*, 480 F.3d 377, 381 (5th Cir. 2007); *Jett*, 7 F.3d at 1245. In *Barrow*, the Fifth Circuit considered whether a

superintendent had been delegated policymaking authority by a statute giving superintendents the "sole authority to make recommendations to the board regarding the selection of all personnel, except that the board may delegate final authority for those decisions to the superintendent . . . ." 480 F.3d at 381. Like the DCCCD Board of Trustees, the school board of an independent school district is given "*exclusive* authority to manage and govern the public free schools of the district." *Id.* at 380 (emphasis in original) (citing Tex. Educ. Code § 23.26). Even where a statute had explicitly granted such authority to a superintendent, the Fifth Circuit found that the superintendent was not a policymaker because the plaintiff's arguments could "not prevail against the backdrop of Texas's legislative scheme, which generally makes the board the policymaker and the superintendent the head administrator." *Id.*

None of Plaintiff's arguments in the instant case provide sufficient facts to show that Zamora's role goes beyond that of a decisionmaker or "head administrator" as it relates to employment decisions. All of his actions are, by Plaintiff's admissions, with the purpose of acting within the guidelines and policies set by the DCCCD.[1] Any references in Plaintiff's complaint to Zamora's policymaking authority comes in the form of conclusory statements.[2] Even the fact that

---

[1]For example, Plaintiff states that "Zamora utiliz[ed] his specific designated or delegated authority to implement Defendant's policies and procedures to retaliate against employees at MVC." 2d Am. Compl. ¶ 3.17. Zamora also "sought to and did in fact retaliate against Plaintiff by his implementation and/or execution of Defendant's policies, procedures, practices, and customs . . . ." *Id.* ¶ 3.8.

[2]The following discusses the ways in which Plaintiff alleges Zamora has been delegated policymaking authority. His responsibilities include "(1) being 'responsible for the overall operation of the college' and (2) 'develop[ing] and administer[ing] the college budget, college objectives, and supervis[ing] key administrators within the guidelines of the DCCCD policies and procedures." 2d Am. Compl. ¶ 3.3. Plaintiff lists additional duties which include "coordinating the activities of key administrators", "developing and presenting the college budget . . . to the DCCCD Board", "[s]upervis[ing] the recruitment and selection of all college personnel and recommends for employment all contractual personnel." *Id.* ¶ 3.4. Plaintiff on several occasions mentions Zamora's "policymaking authority" in reference to his ability to give negative evaluations and put an employee on a PIP. *Id.* ¶¶

he may have had the discretion to hire or fire individuals does not make the DCCCD liable unless he sets the employment policies himself. *Pembaur*, 475 U.S. at 483 n.12. Instead of setting the policies, Plaintiff cites to numerous DCCCD regulations that set employment policies and appear to require Zamora and other supervisors to implement those policies. *See* ¶ 3.49-3.51. Zamora plays a supervisory role and has the authority to make personnel decision regarding individuals, but he does not set the MVC policy on the subject. Accordingly, the Court finds that Zamora is not a policymaker, nor has he been delegated policymaking authority for the purposes of a § 1983 claim.

To find that the Board was liable as the policymaker in this case, Plaintiff would have to show that it was deliberately indifferent to Zamora's actions. Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit notes the "extremely heavy burden" in establishing both the municipality's deliberate indifference and a causal link between the alleged custom and the alleged constitutional violation. *See Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (stating these two requirements "must not be diluted"). Plaintiff's complaint fails to show deliberate indifference on the part of the Board. Plaintiff's allegations that the Board was aware of the no confidence vote and may or may not have discussed personnel matters at a meeting is not enough for a finding of deliberate indifference towards violations of Plaintiff's constitutional rights.

   **2.    Policy**

---

3.8, 3.11, 3.14, 3.20, 3.25. Plaintiff also discusses the "power and authority delegated" to Zamora in reference to approving travel plans and non-renewal of contracts. *Id*. ¶¶ 3.8, 3.15, 3.18, 3.19, 3.28.

For the purposes of § 1983, a policy may come about as a result of a formally announced policy statement or, in the alternative, a plaintiff may demonstrate a "persistent widespread practice of city officials or employees which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Webster*, 735 F.2d at 841. In the absence of an official policy statement, a "custom or policy" may take the form of either (1) a single unconstitutional act by a policymaker or (2) a pattern of unconstitutional conduct by a non-policymaker. *Zarnow*, 614 F.3d at 169.

### a. Official Policy Statement

Plaintiff's brief repeatedly states that it is Zamora's "unconstitutional <u>implementation</u> of Defendant's policies and procedures" that makes Defendant liable under § 1983. *See e.g.* Pl. Br. Supp. Resp. Am. Mot. Dismiss ¶¶ 3.5, 3.10, 3.35, ECF No. 37. Plaintiff includes, for example, the policy that allows Zamora to give Plaintiff a negative evaluation and put her on a PIP.[3] Although Plaintiff notes that it is Zamora's responsibility to develop the college budget, that is not within the area in which the alleged unconstitutional acts occurred. *See Pembaur*, 475 U.S. at 483 n.12 (showing through an example that a sheriff is only the policymaker for the specific areas in which that authority has been delegated).

As noted by the Defendant's response, however, "not every constitutional violation occurring in the name of an alleged policy gives rise to liability." Def. Reply Am. Mot. Dismiss 5, ECF No. 39. There must be a direct causal link between the policy and the constitutional violation. *Id.* (citing

---

[3] Plaintiff points to a DCCCD Policy that states that "[a] supervisor shall make a written record of an employee's performance deficiencies through <u>the College District</u>'s evaluation process" and argues that this policy grants this authority to the individual colleges and not DCCCD. *Id.* ¶ 3.11. It seems however that "College District" likely refers to the Dallas County Community <u>College District</u> rather than an individual college, as Plaintiff states.

*City of Canton v. Harris*, 471 U.S. 112, 128 (1985)). "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). A city is not automatically "liable under § 1983 if one of its employee happens to apply the policy in an unconstitutional manner, for liability would then rest on *respondeat superior*." *City of Canton*, 489 U.S. at 387. The fact that Zamora acted in the name of policies created by the Board while taking actions alleged to be unconstitutional does not place liability for his actions on the DCCCD. Work places across the country have policies allowing for evaluation systems and PIPs. Zamora's actions in the implementation of those policies were departures from the intended use of the policies rather than actions motivated by such policies. Accordingly, the Court finds that the Plaintiff has not stated an official policy sufficient to uphold a claim under § 1983.

### b. Single Unconstitutional Act

A single unconstitutional act may be sufficient for a claim under § 1983 only if it was the result of a decision by a final policymaker. *See Zarnow*, 614 F.3d at 169. Since the Court has determined that Zamora is not a policymaker, Plaintiff would need to show a single unconstitutional act committed by the DCCCD Board of Trustees. In those areas in which an individual "'is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one whose edicts or acts may fairly be said to represent official policy for which the county may be held responsible under section 1983.'" *Woodward v. Andrus*, 419 F.3d 348, 352 (5th Cir. 2005) (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir. 1980)).

Plaintiff states that DCCCD is liable if the Board approved Zamora's decisions. Pl. Br.

Supp. Resp. Am. Mot. Dismiss 13 (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 225 (5th Cir. 1999)). As noted above, Plaintiff has not stated sufficient facts to show deliberate indifference on the part of the Board. While Plaintiff cites to several Board meetings in which personnel issues were discussed, as Defendant points out, any vote approving the actions of Zamora would have had to have been held during an open meeting. *See* Tex. Gov't Code Ann. § 551.002. Meeting minutes must indicate any vote, order, decision, or other action taken. *Id*. § 551.021. Plaintiff's complaint makes it apparent that she has access to meeting minutes, and yet the complaint does not allege any facts showing that the Board actually approved of Zamora's actions in a manner similar to that in *Harris*. *See Harris*, 168 F.3d at 219 (stating the Board of Trustees affirmed the decision in a grievance hearing). Accordingly, the Court finds that the Plaintiff has not stated claims showing a policy through a single unconstitutional act of the DCCCD Board of Trustees.

### c. Pattern of Unconstitutional Conduct

Even if there is not an official policy or an unconstitutional act by a policymaker, an individual may still bring a claim under § 1983 by showing that there has been a pattern of unconstitutional conduct by a non-policymaker. *Zarnow*, 614 F.3d at 169. For conduct to be sufficiently widespread, it must have "occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Webster*, 735 F.2d at 842. The pattern requires "similarity and specificity; '[p]rior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.'" *Peterson v. City of Fort Worth*, 488 F.3d 838, 851 (5th Cir. 2009) (quoting *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 383 (5th Cir. 2005)). "A pattern also requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'" *Id.* (quoting

*McConney v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989)).

Plaintiff alleges that the vote of "no confidence" held in March 2010 is sufficient for a finding of a widespread pattern of unconstitutional behavior. *See* Pl. Br. Supp. Resp. Am. Mot. Dismiss ¶¶ 3.36-3.37. The summary of grievances accompanying the results of the vote discussed Zamora's "disruptive disagreement with the Vice President of Instruction [Plaintiff]", decisions "foster[ing] a climate of fear and mistrust", "chilling effect on freedom of discussion", and "retaliatory actions against faculty," among other complaints. 2d Am. Compl. ¶¶ 3.37-3.39. Defendant argues that the vote did not allege facts indicating Zamora engaged in violation of employees' constitutional rights or that he regularly discriminated on the basis of gender. Def. Br. Supp. Am. Mot. Dismiss 13, ECF No. 31. In addition, Defendant states that the "'no confidence' vote is not a formal procedure that is sanctioned, or even recognized, by the District and is akin to an associate at a law firm lodging a formal complaint that a partner is critical of her writing skills then attempting to offer the complaint as proof that the same partner engaged in sexual harassment." Def. Reply Am. Mot. Dismiss 3, ECF No. 39.

The no confidence vote alone does not provide facts to show a sufficiently widespread pattern of unconstitutional behavior. The Fifth Circuit has set the bar very high for the number of prior incidents necessary for a finding of municipal liability without an official policy or the actions of a policymaker. *See Peterson*, 588 F.3d at 851 (finding twenty-seven previous complaints not sufficient); *Pineda v. City of Hous.*, 863 F.2d 1180, 1184 (5th Cir. 1989) (finding no custom from eleven previous incidents). Despite several issues discussed, the list of grievances does not prove that any of the concerns were even particularly widespread. For example, one of the grievances relates only to Zamora's interactions with Plaintiff. *See id.* ¶ 3.37 ("[Zamora] has serious and

disruptive disagreement with the Vice President of Instruction"). There is no indication that the other grievances were any more widespread than that which refers specifically to Plaintiff's disagreements. "The elements of the *Monell* test exist to prevent a collapse of the municipal liability inquiry into a *respondeat superior* analysis." *Zarnow*, 614 F.3d at 167. Without an actual policy or even a pattern creating a de facto policy, the Court would be placing *respondeat superior* liability on the DCCCD Board solely because of the actions of one employee.

Plaintiff's reliance on the no confidence vote also fails to provide the specificity necessary for a showing of municipal liability. Most of the grievances relate to Zamora's poor management skills rather than any constitutional violations. As noted by the Defendant, neither the grievances nor any other facts set out in Plaintiff's complaint provides evidence of any other firing, suspension, or contract non-renewal. Def. Br. Supp. Am. Mot. Dismiss 13, ECF No. 31. The only constitutional violation alleged which is also discussed in the grievances is a potential pattern of First Amendment violations because Zamora had a "chilling effect on freedom of discussion." This allegation alone with no further facts is likely not sufficient for a finding of municipal liability. However, for the purposes of a motion to dismiss, the Court takes all facts in the light most favorable to the Plaintiff and therefore, will consider whether a pattern of unconstitutional First Amendment violations was the moving force behind a violation of Plaintiff's free speech rights.

### 3. Moving Force

The third element of the *Monell* test states the plaintiff must show that "municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 at 404. "Congress did not intend to impose liability on a municipality unless *deliberate* action attributable to the municipality

itself is the 'moving force' behind the plaintiff's deprivation of federal rights." *Id.* at 400 (emphasis in original) (citing *Monell*, 436 U.S. at 694). A municipality cannot be found liable if a person has suffered no constitutional violation. *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 467 (5th Cir. 2010). Because the Court finds that Plaintiff does not state a claim for a First Amendment violation, the Court holds that Plaintiff fails to meet the requirements for municipal liability.

Plaintiff alleges that Defendant deprived her of her right to free speech and academic freedom under the United States Constitution, and alternatively, the Texas Constitution. 2d Am. Compl. ¶ 4.10. Public employees do not forego all protections of the First Amendment, but "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). As long as employees are speaking as (1) citizens (2) about matters of public concern, their speech is protected, and they face only the restrictions necessary for employers to operate. *Id.* at 419. Accordingly, the Court must consider whether Plaintiff's speech was made as a citizen or in her capacity as a Vice President of MVC. If Plaintiff was operating as a citizen, then the Court will move to the question of whether the subject matter of the speech was one of public concern.

Defendant argues that Plaintiff's First Amendment claim fails because she wrote the memorandum at issue pursuant to her official duties. Def. Br. Supp. Mot. Dismiss 11, ECF No. 7. Defendant acknowledges that the memo was written voluntarily, however Defendant states that it was written under her official title, with her official email signature, and sent from her official email address. In response, Plaintiff argues that these facts are not before the Court and therefore may not

be considered.[4] Pl. Br. Supp. Resp. Mot. Dismiss ¶ 3.24, ECF No. 17. However, even without the memo, it is apparent from the facts that Plaintiff was not acting as a private citizen when she expressed her concerns to President Zamora and therefore does not have the same level of protection under the First Amendment. First, Plaintiff's memo was written with five other instructional/academic deans at MVC. 2d Am. Compl. ¶ 3.1. Rather than write the document alone, she collaborated with her colleagues in the effort. Second, she sent the memo to the President of MVC and copied the Chancellor. *Id.* ¶¶ 3.1, 3.2. Unlike instances where an individual has published a letter in the newspaper or made a public speech, Plaintiff disseminated her memo only within the workplace. *See Garcetti*, 547 U.S. at 414. Third, the subject matter of the letter, fiduciary and budgetary concerns, falls squarely within her official duties as a Vice President of MVC. The fact that she pursued this subject voluntarily does not minimize the fact that the effort was within the scope of her employment.

Additionally, Plaintiff alleges that Zamora violated her right to free speech when she spoke out about and complained of gender discrimination. *See* 2d Am. Compl. ¶ 4.12. However, the Court fails to find any facts referring to a violation of Plaintiff's First Amendment right to discuss her employment discrimination claims. Accordingly, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's § 1983 claims.

B.   **Chapter 106**

Additionally, Defendant moves to dismiss Count Six of Plaintiff's complaint for violation of Chapter 106 of the Texas Civil Practices and Remedies Code. Although the Texas Supreme

---

[4] Had Defendant attached the memo to the motion to dismiss, the Court could have considered these facts. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d at 499. However, in the absence of the document itself, the Court must liberally construe any questions of fact in a light most favorable to the Plaintiff. *Id.*

Court has not yet ruled on whether this provision applies to employment discrimination cases, the Austin Court of Appeals has ruled on this issue several times, citing the legislative history of this provision and finding that Chapter 106 does not apply to employment discrimination cases. *See Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 812-813 (Tex. App.–Austin 2009, n.p.h.); *Wright v. Tex. Comm'n on Human Rights*, No. 03-03-00710-CV, 2005 WL 1787428, at *1 (Tex. App.–Austin July 27, 2005, pet. dism'd);. Plaintiff cites to one case in the Dallas Court of Appeals, but unlike the Austin cases, that case focuses on the issue of sovereign immunity. *See Ntreh v. Univ. of Tex. at Dall.*, 936 S.W.2d 202 (Tex. App.–Dallas 1996), *rev'd in part on other grounds*, 947 S.W.2d 202 (Tex. 1997). The Court will follow the holdings of the Austin Court of Appeals and find that Defendant's motion to dismiss Plaintiff's Chapter 106 claim is hereby **GRANTED**.

**V.     Conclusion**

For the foregoing reasons, the Court finds that Defendant Dallas County Community College District's Amended Motion for Partial Dismissal (ECF No. 30) should be and is hereby **GRANTED**. Accordingly, it is **ORDERED** that Plaintiff's claims brought under 42 U.S.C. § 1983 are **DISMISSED**. It is **FURTHER ORDERED** that Plaintiff's claim under Chapter 106 of the Texas Civil Practices and Remedies Code is **DISMISSED**.

**SO ORDERED** this **16th** day of **May, 2011**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**